**Mohammed Zohaib KAHN, Petitioner,**

v.

**Kenneth ELWOOD, District Director, Immigration and Naturalization Service Respondent.**

**No. 1:CV–02–1734.**

United States District Court, M.D. Pennsylvania.

Nov. 21, 2002.

Robert Thomas Balaban, Lewisberry, PA, for Petitioner.

Daryl F. Bloom, U.S. Attorney's Office, Harrisburg, PA, for Respondent.

### MEMORANDUM

RAMBO, District Judge.

Before the court are the following motions: (1) Petitioner's Emergency Motion for Stay of Removal Pending Resolution of Appeal from Order of District Court; (2) Respondents' Motion to Lift the Stay of Removal; and (3) Respondents' motion for an Expedited Decision. The court con-

ducted a conference call on this issue and thus, the matters are ripe for disposition.

### I. Background

The factual background of this matter is laid out in the court's November 4, 2002 memorandum and order denying Petitioner's habeas corpus petition and is incorporated by reference. Relevant to the instant motions, however, is the following background. Petitioner is a twenty year-old native and citizen of Pakistan, who entered the United States on December 28, 1996 and who has been a lawful permanent resident of the United States since his entry. On September 18, 2000, Petitioner was convicted in Delaware for possession with intent to distribute marijuana. On November 26, 2001, an immigration judge ordered Petitioner removed from the United States to Pakistan. That decision was sustained by the Board of Immigration Appeals on June 24, 2002.

On September 30, 2002, Petitioner filed a petition for writ of habeas corpus with this court. In a memorandum and opinion dated November 4, 2002, the court denied Petitioner's writ of habeas corpus and vacated the temporary stay of removal. In making its decision the court concluded that "[b]ecause the BIA applied the correct legal standard and followed the applicable regulations, the court finds that [the BIA's] decision was not contrary to the laws of the United States." *Khan v. Ashcroft*, No. 02–1734, slip op. at 10 (M.D.Pa. November 4, 2002).

On November 15, 2002, Petitioner filed a "Notice of Appeal," from this court's November 4, 2002 order, to the United States Court of Appeals for the Third Circuit. On the same day, Petitioner filed an "Emergency Motion for Stay of Removal Pending Resolution of Appeal from Order of District Court." On November 12, 2002, Petitioner was transferred to Louisi-

ana for final execution of the removal order. (Emer. Mot. to Stay at 2, ¶ 3.)

On November 15, 2002, the court issued a temporary stay of removal pending the outcome of Petitioner's motion for stay pending appeal. In response, Respondents filed a motion to lift the temporary stay along with a supporting brief; in that document, Respondents also addressed the merits of Petitioner's motion for stay pending appeal. Respondents also filed a motion to expedite the court's decision on these matters due to the imminence of Petitioner's removal to Pakistan. The court held a conference call on November 19, 2002 on these issues and heard argument from both sides. Accordingly, the motions are now ripe for disposition.

## II. *Discussion*

In his motion for a stay of removal pending appeal, Petitioner contends that the court's order denying his petition for writ of habeas corpus and vacating its previous stay of deportation denied him the right to "fundamental fairness and due process of law." (Emer. Mot. to Stay at 2, ¶ 5.) Petitioner continues to allege that he is entitled to relief from removal in the form of withholding of removal under the United Nations Convention Against Torture and Other Crimes, Inhumane or Degrading Treatment or Punishment. (*Id.*) Petitioner avers that a stay of removal pending resolution of the appeal to the Third Circuit will not prejudice Respondents. (*Id.* at 3, ¶ 8.) Because, Petitioner was in the Immigration and Naturalization Service's ("INS") custody from March 7, 2001 through February 4, 2002 and again from September 6, 2002 until present, he argues that further detention pending appeal would work only a minor injury to Respondents (*Id.*) In contrast, Petitioner argues that if the stay is denied he would face irreparable harm. He would be re-

moved from the United States to Pakistan, a place that he has not lived for a number of years. Petitioner argues that he "has a substantial liberty interest at stake—his right to remain in the United States ..." and not to be "virtually exiled and/or subjected to persecution/extreme hardship." (*Id.* at ¶ 7.) Petitioner contends that a motion for stay of removal is evaluated under the same standards as a motion for a preliminary injunction. (*Id.* at 5.)

According to Petitioner, in order for the court to issue a stay of removal pending appeal, he must show (1) a likelihood of success on the merits; (2) that irreparable harm would occur if a stay is not granted; (3) that the potential harm to the movant outweighs the harm to the opposing party if a stay is not granted; and (4) that granting a stay of removal would serve the public interest. *See Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

Respondents paint a very different picture. Respondents suggest that the potential harm to the United States exceeds any harm caused to Petitioner. For example, Respondents aver that the INS has expended a great deal of time and money in arranging for travel documents and travel authorization for Petitioner to be removed. (Resp. Mot. to Expedite at 6–7.) Moreover, Respondents contend that the only harm to Petitioner is that he will not be present in the United States during the pendency of his appeal. (Representation of AUSA Bloom during November 19, 2002 conference call.) Most importantly, however, Respondents argue that the standard for issuing a motion for stay of removal pending appeal is different than those factors typically considered when deciding whether to grant a preliminary injunction. Respondents allege that Petitioner's stay of removal is "governed by the new stringent, mandatory stay provisions of 8

U.S.C. § 1252(f)(2)." (Br. in Supp. of Mot. to Lift Stay at 2.)

Consequently, the first issue the court must decide is what standard should be employed to determine whether to grant a stay of removal pending appeal. For the reasons that follow, the court concludes that it should employ the traditional standards used in deciding whether to grant a preliminary injunction, rather than the more stringent standards set forth in 8 U.S.C. § 1252(f)(2).

## A. *Standard employed to stay removal pending appeal*

■ The parties dispute whether the court should, in deciding whether to grant Petitioner's stay pending appeal, apply the traditional test used in deciding whether to grant a preliminary injunction or should apply the strict standard set forth in 8 U.S.C. 1252(f). Section 1252(f) provides:

**Limit on injunctive relief**

**(1) In general**

Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter,[1] as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

**(2) Particular cases**

Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

8 U.S.C. § 1252(f).

The relevant inquiry is whether the limitation in § 1252(f)(2) on a court's authority to "enjoin" the removal of an alien applies to a stay pending appeal. Respondents assert that it does and that the plain language of the statute controls. Petitioner asserts that the standard only applies if the court were issuing a permanent injunction, but that it does not apply to a temporary stay of removal pending appeal. For the reasons that follow, the court agrees with Petitioner.

There is a paucity of case law as to the application of § 1252(f)(2) to a stay as opposed to a permanent injunction, and what case law exists is in conflict. *Compare Bin Weng v. United States Attorney General*, 287 F.3d 1335, 1336–40 (11th Cir. 2002) (denying stay of removal pending appeal because petitioner did not satisfy the clear and convincing standard; holds that subsection 1252(f)(2) applies not only to injunctions but temporary stays of removal); *with Mohammed v. Reno*, 309 F.3d 95, 96 (2d Cir. October 24, 2002) (concluding that the heightened standard of review required by 8 U.S.C. § 1252(f)(2) does not apply to consideration of a stay pending appeal); *Maharaj v. Ashcroft*, 295 F.3d 963, 965–66 (9th Cir.2002) ("section 1252(f)(2) refers only to permanent injunctive relief and not to temporary relief such as an injunction pending appeal"); *Bejjani v.INS*, 271 F.3d 670, 687–89 (6th Cir.2001) (stay of removal upheld under traditional preliminary injunction standard); *Andreiu v. Ashcroft*, 253 F.3d 477, 479 (9th Cir. 2001) (en banc court "concludes that § 1252(f)(2) does not limit the power of

---

**1.** Part IV, entitled "Inspection, Apprehension, Examination, Exclusion, and Removal," comprises 8 U.S.C. §§ 1221–1231.

federal courts to grant a stay of removal," but the traditional test for preliminary injunctive relief applies); *Lal v. Reno,* No. 99–3160, 221 F.3d 1338 (table), [Reported in full] at 2000 U.S.App. LEXIS 15449, 2000 WL 831801 at *1 (7th Cir. June 26, 2000) ("We do not read the requirements for injunctive relief imposed by 8 U.S.C. § 1252(f)(2) as governing stays pending a decision on a timely petition for review."); *Saini v. INS,* 64 F.Supp.2d 923, 929 (D.Ariz.1999) (upholding application of preliminary injunction standard for stay of removal during habeas review).[2]

Third Circuit has not ruled on this issue. However, the court finds the reasoning and analysis employed by the Second, Ninth, and Sixth Circuits more convincing than the Eleventh Circuit's reasoning. First, the use of the word "enjoin" in subsection 1252(f)(2) contrasts with the wording "enjoin or restrain" in subsection 1252(f)(1). As the Second Circuit pointed out in *Mohammed,* this suggests "that 'enjoin' in (f)(2) applies to a permanent prohibition and that 'enjoin or restrain' applies to both a permanent and an interim prohibition." 309 F.3d at 98. In reaching this conclusion, the Second Circuit reasoned that:

> [w]hen Congress pointedly uses both words in one subsection and then uses only the term "enjoin" in an adjacent

subsection, there is an implication that "restrain" is used in (f)(1) to refer to an interim prohibition, and that the omission of "restrain" in (f)(2) therefore makes this subsection inapplicable to such a prohibition. Reading the coverage of both subsections to be identical renders "restrain" in (f)(1) surplusage.

.    .    .    .    .

> Moreover, when Congress wished to legislate concerning a stay pending appeal, it explicitly used the word "stay." *See* 8 U.S.C. § 1252(b)(3)(B) (service or petition for review does not "stay" removal pending court's decision unless the court so orders). If Congress wanted to apply a heightened standard to a stay pending appeal, it would likely have used the word "stay" in subsection 1252(f)(2) instead of the word "enjoin"; indeed, it would likely have included such a standard in subsection 1252(b).

*Id.* at 99. This reading of § 1252(f) is in accord with the legislative history of these two provisions. As the Ninth Circuit pointed out in *Andreiu,* the House Report on section 1252(f) states that it prevents courts from enjoining " 'procedures established by Congress to reform the process of removing illegal aliens.' " 253 F.3d at 481 n. 1 (quoting H.R.Rep. No. 104–469(I), at 191 (1996)); *see also Reno v. American–*

**2.** The following cases applied § 1252(f)(2) without discussing or analyzing whether it applies to a temporary stay. *See Kourteva v. INS,* 151 F.Supp.2d 1126, 1128 (N.D.Cal. 2001) (denying motion for stay of removal pursuant to § 1252(f)(2)); *Williams v. Reno,* No. 00–71241, 2001 U.S. Dist. LEXIS 824, 2001 WL 85867 at *3 (E.D.Mich. Jan.11, 2001) (stay denied under § 1252(f)(2) because petitioner did not show clear and convincing evidence that his deportation was prohibited as a matter of law); *Song v. INS,* 82 F.Supp.2d 1121, 1130, 1134 (C.D.Cal.2000) ("By its terms, the IIRIRA standard [§ 1252(f)(2)] clearly applies because Petitioner seeks a stay of deportation;" stay of

execution of petitioner's deportation granted during pendency of case based on finding of a constitutional violation); *Hypolite v. Blackman,* 57 F.Supp.2d 128, 132, 134 (M.D.Pa. 1999) (motion for stay of deportation denied under § 1252(f)(2)); *Naidoo v. INS,* 39 F.Supp.2d 755, 762 (W.D.La.1999) (holding that the "court [was] expressly precluded from issuing a stay of the order of deportation" because petitioner did not make requisite showing under § 1252(f)(2)); *Ozoanya v. Reno,* 979 F.Supp. 447, 451 (W.D.La.1997) (vacating stay issued by another district court under § 1252(f)(2) because petitioner did not show that stay of deportation was prohibited as a matter of law).

*Arab Anti–Discrimination Committee,* 525 U.S. 471, 481–82, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (observing in dictum that § 1252(f) prohibits federal courts from granting classwide injunctive relief against the operation of certain INA provisions but that this ban did not extend to individual cases).

Moreover, as the *Andreiu* court noted, "the clear concern of [section 1252(f)] is limiting the power of courts to enjoin the operation of the immigration laws, not with stays of removal [pending appeal] in individual asylum cases." 253 F.3d at 481. The same reasoning applies to stays pending appeal in individual habeas cases. *Mohammed,* 309 F.3d at 99–100.

Accordingly, the court therefore concludes that the heightened standard of review required by subsection 1252(f)(2) does not apply to the consideration of a stay pending appeal, nor does it apply to the court's consideration of the motion to lift the stay. Thus, the court will proceed to analyze Petitioner's entitlement to such a stay under traditional standards.

## B. *Traditional Standards for stay pending appeal*

■ There are four relevant criteria in considering whether to issue a stay of an order of a district court pending appeal: (1) the likelihood of success on the merits; (2) irreparable injury to the moving party if the stay is denied; (3) substantial injury to the party opposing the stay if one is issued; and (4) whether granting the stay would be in the public interest. *See Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *see also Mohammed,* 309 F.3d at 100. As in most cases where the court is asked to weigh a number of factors, some uncertainty has developed as to the relative weight of each factor, as well as what the individual factors actually mean. In particular, there is conflicting case law as to the first factor because of the various formulations used to describe the degree of likelihood of success that must be shown.

Some courts require "probability of success," plus a "balance of the hardships [that] tips sharply" in favor of the applicant. *See, e.g., Maharaj,* 295 F.3d at 966; *Arnold v. Garlock, Inc.,* 278 F.3d 426, 439 (5th Cir.2001) (requiring a "substantial case on the merits" plus a "balance of equities weighing heavily" in favor of the applicant).[3] However, the court finds the approach taken by the District of Columbia Circuit to present a much more workable approach. In *Washington Area Transit Commission v. Holiday Tours, Inc.,* the D.C. Circuit stated that "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay facts." 559 F.2d 841, 843 (D.C.Cir.1977). The Sixth Circuit explained it this way: "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of

---

**3.** Many courts borrow the standard for issuing a preliminary injunction. However, in the case of preliminary injunctions the movant must show that he meets all of the factors before the court will issue a preliminary injunction. *See, e.g., New Jersey Hosp. Ass'n. v. Waldman,* 73 F.3d 509, 513 ("The injunction shall issue only if [the movant] produces evidence sufficient to convince the district court that all four factors favor preliminary relief."). On the other hand, when a court is deciding whether to issue a stay pending appeal, the court balances the factors. *See Hilton* 481 U.S. at 777–778, 107 S.Ct. 2113 (stating that the individual factors are considered as a whole, and that the formula cannot be reduced to a rigid set of rules). Moreover, a preliminary injunction will last until the end of the trial, often a considerable length of time after issuance. Whereas a stay pending appeal might last for a brief interval, especially if the appeal is heard on an expedited basis.

one excuses less of the other." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir.1991).

■ In the instant case, the gravity of the injury to the alien if a stay is denied, compared to the lesser injury to the government if one alien is permitted to remain while an appeal is decided, suggests that the degree of likelihood of success on appeal need not be too high.

### 1. Likelihood of success on the merits

Given that the court has denied Petitioner's habeas petition, he has an uphill battle to show that he will likely succeed on the merits of this case. In its November 4, 2002 memorandum, the court concluded that the BIA applied the correct legal standard and followed the applicable regulations in declining to grant Petitioner withholding of removal. In reviewing its decision, the court believes it correctly denied Petitioner's habeas petition. In reaching its decision on the merits of Petitioner's claim, the BIA found that while Petitioner submitted ample evidence that there were gross and flagrant human rights violations in Pakistan, he failed to establish that it was more likely than not that he would be at a personal risk of torture by, or at the acquiescence of, the Pakistani government. (*See* slip op. at 9.)

Petitioner argued that given Pakistan's pattern of human rights abuses and that Pakistan would be aware of his return, it is more likely than not that he will be tortured upon his deportation. Therefore, according to Petitioner, because the BIA concluded otherwise, it must have applied the wrong legal standard. In denying his petition, the court stated that, "while such an argument may be compelling on direct review, Petitioner misapprehends the nature of habeas corpus relief." (*Id.* at 9.)

Habeas corpus relief is available to remedy violations of due process that result from a constitutional or statutory error in the removal process. *Gutierrez–Chavez v. INS,* 298 F.3d 824, 830 (9th Cir.2002). Because the court found that the BIA applied the correct legal standard and followed the applicable regulations, the court believes that its decision to deny Petitioner habeas relief was correct.

Nonetheless, immigration law is a dismal swamp. It is one of the most murky, obtuse, and fastest changing areas of jurisprudence that this court faces. Consequently, the Third Circuit may agree with Petitioner's contention that the BIA's decision—as well as this court's order—"denies petitioner the right to fundamental fairness and due process of law." (Pet. Emer. Mot. for Stay at 2, ¶ 5.) Thus, while Petitioner may not have a *probability* of success on the merits, this court cannot conclude that does not have a *possibility* of success on the merits.

### 2. Irreparable injury to Petitioner if stay is denied

If the stay of removal is denied, Petitioner will be removed from the United States to Pakistan. Petitioner, at twenty years of age, has spent over a quarter of his life in the United States. His father is a United States citizen. (Pet. Emer. Mot. for Stay at 2, ¶ 4.) His mother is a lawful permanent resident, and his only sibling, a younger sister, is a lawful permanent resident. (*Id.*) His removal to Pakistan would certainly cause severe and irreparable injury.

Respondents contend that there would be no injury to Petitioner because he would be able to pursue his appeal—through his attorney—despite the fact that he would be in Pakistan. While this may be technically correct, the court finds this contention to be impractical and wrought

with problems. Petitioner's access to his counsel during the pendency of his appeal is invaluable. Petitioner may possess information relevant to his appeal that would not be accessible if he were half-way around the globe. Moreover, if the Third Circuit disagrees with this court's findings, then the Respondents would have to go through the time, effort and expense of bringing Petitioner back to the United States, provided this in fact could be done.[4]

If the stay is denied, a truly more irreparable injury could occur—Petitioner could face possible torture in Pakistan. In his petition for writ of habeas corpus, Petitioner presented evidence of gross violations of human rights in Pakistan. While the BIA concluded that Petitioner had not shown that it was more likely than not the he would be tortured, there is still the possibility that Petitioner could, in fact, face torture.

To be clear, the court is not saying that the BIA applied the wrong standard—it has already concluded that it applied the correct standard when it denied Petitioner's habeas petition—nor is the court attempting to second guess the BIA's weighing of the evidence. Rather, the court is saying that merely because Petitioner did not establish by a preponderance of the evidence that he will be tortured does not mean that Petitioner *in fact* will not be tortured.[5] Thus, while Petitioner may not have satisfied his burden of proof before the BIA, the fact that there is the possibility of torture weighs heavily in favor of concluding that Petitioner could face irreparable injury if the stay is denied. Surely, the specter of potential prospective torture—no matter how remote the possibility—rises to the level of irreparable harm.

### 3. Substantial injury to the Respondents

The third traditional stay factor is whether there is a risk of substantial injury to the party opposing the stay. *See Hilton*, 481 U.S. at 776, 107 S.Ct. 2113. In the instant case, the Respondents contend that they will face substantial injury if a stay pending appeal is granted. In particular, they aver that the INS has expended considerable time and expense to schedule Petitioner's removal. (Mot. for Exped. Dec. at ¶ 7.) Moreover, "[i]f Petitioner's travel document expires, the INS must begin the process of obtaining a new travel document, continuing Petitioner's detention and expending numerous government resources." (*Id.* at ¶ 8.)

4. During a conference call, Respondents were quick to assure the court that Petitioner could be returned to the United States if the Third Circuit so ordered. The court doubts very much that it is as easy as Respondents would have the court believe. Once in Pakistan, Petitioner is no longer under the watchful eye of Respondents. Given that Respondents impressed upon the court the great difficulty of arranging for travel documents to remove Petitioner, the court can only imagine that it would be far more difficult to arrange for his return.

5. Again, the court is not attempting to second guess the findings of fact by the BIA. Nor is the court in anyway implying that its decision to deny petitioner's habeas petition was incorrect. The court is merely trying to illustrate that there exists the possibility that Petitioner could face truly irreparable harm. A more likely than not standard means fifty-one percent or higher. Thus, Petitioner could have failed to prove that he was more likely than not going to face torture upon his return to Pakistan and still have shown that there was a "50–50 chance." While the difference between fifty-one percent and zero percent may be immaterial for the purposes of deciding whether Petitioner satisfied his burden of proof on the administrative level, the court finds it material for the purpose of assessing the potential for irreparable harm if the stay pending appeal is not granted.

The court is not convinced that this rises to the level of "substantial injury." It is true that Respondents will have to expend more resources to detain Petitioner during the pendency of his appeal and that they will likely have to obtain new travel documents. However, the harm in incurring these costs, which are financial in nature, does not come close to the irreparable harm that Petitioner would face if the stay pending appeal were not granted. Moreover, the United States Government is in a better position to absorb the harm of one alien who is permitted to remain in the United States, than Petitioner is to absorb the harm caused by his removal. Thus, the court finds that Respondents will not face substantial injury if Petitioner's removal is stayed pending appeal.

### 4. Public Interest

The fourth factor to be weighed in deciding whether to grant a stay of removal pending appeal is whether granting a stay serves the public interest. *See Hilton*, 481 U.S. at 776, 107 S.Ct. 2113. One would be hard pressed to find a standard more nebulous than whether something serves the public interest. Nonetheless, Respondents argue that granting the stay would not be in the public interest. They contend that the United States, and by extension the public in general, has an interest in removing aliens who are "aggravated felons." *See* 8 U.S.C. § 1101(a)(43) (defining aggravated felony). It is true that United States and the public have an interest in removing persons who are aggravated felons under the immigration laws. In enacting IIRIRA, which broadened the definition of aggravated felony and curtailed much of the Attorney General's discretionary relief, Congress was presumably legislating for the public good. Thus, it is clearly within the public interest for aliens who are aggravated felons, subject to a final order of removal, to be removed from the United States.

However, the public interest is also served by not removing aliens until they have been afforded the opportunity to seek appellate review. While it is true that Petitioner could pursue an appeal, while in Pakistan, through his attorney, the quality of his appeal is likely to be enhanced by his presence and accessibility to his attorney. While the court does not believe that it erred in denying Petitioner's habeas petition, Petitioner should have the benefit of appellate court review prior to being removed. It is in the public interest to afford persons, like Petitioner, a full and fair opportunity to litigate their habeas petitions.

It is important to note that a stay pending appeal is not a permanent injunction of Petitioner's removal. Rather, it is only in effect during the pendency of appeal. Consequently, the public interest in removing aliens who are aggravated felons and subject to a final order of removal can be satisfied upon resolution of Petitioner's appeal. Moreover, if the Third Circuit disagrees with the decision of this court, the public interest would be better served by allowing Petitioner to apply for withholding of removal under the Convention Against Torture. Thus, given that the overall equities favor Petitioner, and that the public interest in the removal of aggravated felons will not be impinged by granting a stay, the court concludes that granting the stay of removal pending appeal serves the public good.

### III. *Conclusion*

In balancing all of the factors, the court concludes that the equities weigh in favor of Petitioner. First, there is the possibility that Petitioner will be successful on the merits. Second, the potential for irreparable harm to Petitioner far exceeds the potential for substantial injury to Respondents. Finally, it serves the public good to

grant a stay of removal pending appeal. The biggest factor in making the decision to stay Petitioner's removal pending appeal is the severity of the harm that would occur if Petitioner were removed. This, coupled with the slight inconvenience to Respondents, dictates that the court issue a stay. Accordingly, for the reasons mentioned in this memorandum the court will grant Petitioner's motion for a stay pending the resolution of his appeal to the Third Circuit. The court will deny Respondents' motion to lift the stay.[6] Furthermore, the court will deny as moot, Respondents' motion to expedite its decision. An appropriate order will issue.

---

6. Given that the court has decided to grant Petitioner's motion for stay of removal pending appeal it would be unnecessarily duplicative for the court to list its reasoning for denying Respondents' motion to lift the temporary stay. The temporary stay issued by the court on November 15, 2002 was issued to protect the status quo while the court decided whether to grant the instant motion. It served to preserve the court's jurisdiction and to enable it to obtain information from the Government as to whether a further stay should issue, and if so, under what legal standard. Because the court has decided that 8 U.S.C. § 1252(f)(2) does not apply to temporary stays pending appeal, it also does not apply to *temporary* temporary stays. Courts must have the inherent power to issue a stay at least until the Government responds to the request for a stay.

Moreover, the court notes that, procedurally, the motion will be moot. Respondents' motion to lift the stay was directed at the temporary stay in place while the court decided whether to issue a stay pending appeal. Because the court has decided to issue a stay pending appeal, that stay will supercede the temporary stay that was already in place. However, to retain clarity for the record the court will deny—rather than merely moot—Respondents' motion to lift the stay.