309 F.3d 95
 Haniff MOHAMMED, Petitioner-Appellant,
v.
Janet RENO, Attorney General of the United States; Doris Meissner, Commissioner, Immigration and Naturalization Service; Edward McElroy, New York District Director, Immigration and Naturalization Service, United States Department of Justice; Timothy Murray, Warden of Groveland Correctional Facility; James Walsh, Warden of the Ulster Correctional Facility, Respondents-Appellees.
 Docket No. 02-2443.
 United States Court of Appeals, Second Circuit.
 Argued: September 10, 2002.
 Decided: October 24, 2002.
 
 David A. Yocis, Dewey Ballentine LLP, Washington, D.C., for Petitioner-Appellant.
 Scott Dunn, Asst. U.S. Atty., Brooklyn, N.Y., for Respondents-Appellees.
 Before: WALKER, Chief Judge, NEWMAN, and F.I. PARKER, Circuit Judges.
 JON O. NEWMAN, Circuit Judge.
 
 
 1
 This motion by the Government to vacate a stay of removal (formerly called "deportation") following the denial of a petition for a writ of habeas corpus raises issues concerning (1) the standard to be applied by the District Court in issuing a stay of removal, (2) the standard to be applied by this Court in staying a trial court's ruling pending appeal, and, (3) with respect to the merits, the continued validity, in light of INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), of our decision in Domond v. INS, 244 F.3d 81 (2d Cir.2001). Domond held that an alien, subject to removal because of a felony committed prior to the effective dates of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009 (1996), but convicted after those dates was ineligible for discretionary relief pursuant to former section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (repealed) (1994). The issues arise from a ruling of the District Court for the Eastern District of New York (John Gleeson, District Judge), entered May 18, 2002, continuing a stay of removal after denial of a habeas corpus petition filed by Haniff Mohammed.
 
 
 2
 We conclude, contrary to the Government's position, that the heightened standard for a stay of deportation, imposed by section 242(f) of the INA, 8 U.S.C. § 1252(f) (2000), is inapplicable to Mohammed's case because he is seeking a temporary stay pending appeal and not an injunction to prevent the operation of provisions of the INA concerning exclusion or removal. We also conclude, however, that, under the normal standards for a stay pending appeal, he has not shown the requisite likelihood of success to warrant temporary appellate relief. We will therefore vacate the District Court's stay, thereby denying a stay pending appeal, but will stay our order for 30 days to afford Mohammed an opportunity to seek a stay of removal from the Supreme Court.
 
 Background
 
 3
 Mohammed, who was born in Trinidad but became a lawful permanent resident of the United States in 1990, committed the state law offense of criminal possession of stolen property in the fourth degree (a Class E felony) in March 1996 and was found guilty in a New York state court in September 1997. In October 1997, he was sentenced to a term of two to four years.[1] An immigration judge ordered his removal for commission of an aggravated felony and denied Mohammed's request for discretionary relief pursuant to former section 212(c) because that provision had been repealed by AEDPA. The Board of Immigration Appeals affirmed both rulings.
 
 
 4
 Mohammed filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, contending that he was entitled to be considered for discretionary relief under section 212(c) of the INA, as that provision existed at the time of his crime. The District Court stayed removal, without objection by the Government, pending disposition of the habeas petition. The District Court denied the petition by a judgment entered May 18, 2002, but continued the stay "unless it is lifted by the court of appeals." Mohammed v. Reno, 205 F.Supp.2d 39, 48 (E.D.N.Y.2002). Judge Gleeson concluded that he was bound by our decision in Domond, but then, in a thoughtful, provocative, but entirely respectful opinion, explained why he believed that Domond was incorrectly decided in light of the Supreme Court's earlier decision in Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), decided seven years before Domond, and the Court's later decision in St. Cyr, decided three months after Domond. On August 1, 2002, the Government filed a motion in this Court to lift the stay of removal.[2]
 
 Discussion
 
 5
 I. Jurisdiction to Stay Removal Pending Appeal
 
 
 6
 The Government initially challenges the District Court's continuation of the stay on the ground that a strict standard for issuing such a stay is prescribed by section 242(f) of the INA, 8 U.S.C. § 1252(f), and that the standard has not been met in this case. Section 242(f) provides:
 
 Limit on injunctive relief
 
 7
 (1) In general
 
 
 8
 Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter,[3] as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.
 
 
 9
 (2) Particular cases
 
 
 10
 Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.
 
 
 11
 8 U.S.C. § 1252(f) (emphasis added).
 
 
 12
 Mohammed disputes the applicability of section 242(f) to a stay pending appeal of the denial of a habeas petition. He contends that the limitation in subsection 242(f)(2) on a court's authority to "enjoin" the removal of an alien does not apply to a stay pending appeal. He also contends that reading subsections 242(f)(1) and 242(f)(2) together indicates that the "clear and convincing evidence" standard of the latter subdivision applies only to a court enjoining removal procedures, and not to a court ruling only on the merits of an individual alien's case.
 
 
 13
 Two circuits have ruled that section 242(f) does not apply to a court's consideration of a stay pending appeal. Maharaj v. Ashcroft, 295 F.3d 963, 964-66 (9th Cir. 2002) (stay pending appeal of denial of habeas petition); Bejjani v. INS, 271 F.3d 670, 687-89 (6th Cir.2001) (stay pending petition to review INS decision to reinstate order of removal); Andreiu v. Ashcroft, 253 F.3d 477, 479-83 (9th Cir.2001) (stay pending petition to review INS decision denying asylum claim). The Eleventh Circuit has ruled to the contrary, Weng v. U.S. Attorney General, 287 F.3d 1335, 1337-40 (11th Cir.2002), although two judges of that Court subsequently expressed disagreement with Weng and urged its reconsideration in banc, Bonhomme-Ardouin v. U.S. Attorney General, 291 F.3d 1289, 1290-91 (11th Cir.2002) (Barkett, J., with whom Wilson, J., joins, concurring).
 
 
 14
 We agree with the Ninth and Sixth Circuits for all of the reasons explained in the Ninth Circuit's in banc decision in Andreiu. First, the use of "enjoin" in subsection 242(f)(2) contrasts with the wording "enjoin or restrain" in subsection 242(f)(1), suggesting that "enjoin" in (f)(2) applies to a permanent prohibition and that "enjoin or restrain" applies to both a permanent and an interim prohibition. Even though, as Weng points out, courts have often used "enjoin" and "restrain" interchangeably, when Congress pointedly uses both words in one subsection and then uses only the term "enjoin" in an adjacent subsection, there is an implication that "restrain" is used in (f)(1) to refer to an interim prohibition, and that the omission of "restrain" in (f)(2) therefore makes this subsection inapplicable to such a prohibition. Reading the coverage of both subsections to be identical renders "restrain" in (f)(1) surplusage.[4] See Andreiu, 253 F.3d at 480.
 
 
 15
 Moreover, when Congress wished to legislate concerning a stay pending appeal, it explicitly used the word "stay." See 8 U.S.C. § 1252(b)(3)(B) (service of petition for review does not "stay" removal pending court's decision unless court so orders). If Congress wanted to apply a heightened standard to a stay pending appeal, it would likely have used the word "stay" in subsection 242(f)(2) instead of "enjoin"; indeed, it would likely have included such a standard in section 242(b). See Andreiu, 253 F.3d at 480-81.
 
 
 16
 In addition, subsection (f)(1) provides that a court has jurisdiction to prohibit "the operation of the provisions of part IV of this subchapter" only "with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." The companion subsection (f)(2) is sensibly understood to mean that it is in such cases that the heightened standard of review is required. "The clear concern of [section 242(f)] is limiting the power of courts to enjoin the operation of the immigration laws, not with stays of removal [pending appeal] in individual asylum cases."[5] Andreiu, 253 F.3d at 481. The same reasoning applies to stays pending appeal in individual habeas cases.
 
 
 17
 Finally, reading subsection (f)(2) to apply to stays pending appeal in individual cases beyond those that seek to enjoin the operation of the immigration laws would lead to the anomalous result that, in cases like the pending one, an alien would have to make a more persuasive showing to obtain a stay than is required to prevail on the merits, thereby permitting the removal of some aliens with meritorious claims against removal. See Andreiu, 253 F.3d at 482.
 
 
 18
 We therefore conclude that the heightened standard of review required by subsection 242(f)(2) did not apply to the District Court's consideration of a stay pending appeal, nor does it apply to our consideration of the motion to lift the stay. We therefore proceed to consider Mohammed's entitlement to such a stay under traditional standards.
 
 II. The Standards for a Stay Pending Appeal
 
 19
 Four criteria are relevant in considering whether to issue a stay of an order of a district court or an administrative agency pending appeal: the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest. See Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). Although courts have discussed and applied these four criteria on numerous occasions, some uncertainty has developed as to the first factor because of the various formulations used to describe the degree of likelihood of success that must be shown.
 
 
 20
 Borrowing a component of the standard for issuing a preliminary injunction,[6] some courts require "a probability of success,"[7] often adding the alternative of "serious legal questions" going to the merits plus a "balance of hardships [that] tips sharply" in favor of the applicant. E.g., Maharaj, 295 F.3d at 966 (internal quotation marks omitted); Arnold v. Garlock, Inc., 278 F.3d 426, 439 (5th Cir.2001) ("substantial case on the merits" plus a "balance of equities weigh[ing] heavily" in favor of applicant). Frequently the "probability of success" phrase is modified by an adjective such as "substantial," Bush v. Gore, 531 U.S. 1046, 1046, 121 S.Ct. 512, 148 L.Ed.2d 553 (2000) (Scalia, J., concurring), or "reasonable," Mori v. International Brotherhood of Boilermakers, 454 U.S. 1301, 1303, 102 S.Ct. 1046, 70 L.Ed.2d 370 (1981) (Rehnquist, J.) (chambers opinion). On occasion we have required "a probability of [the movant's] prevailing that is better than 50 percent." Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir.1985).
 
 
 21
 On the other hand, we have also used "possibility" rather than "probability," usually requiring a "substantial possibility" of success. See Dubose v. Pierce, 761 F.2d 913, 920 (2d Cir.1985), vacated on other grounds, 487 U.S. 1229, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988). Dubose expressed the standard as "a substantial possibility, although less than a likelihood, of success," id.; see Michael v. INS, 48 F.3d 657, 664 (2d Cir.1995), employing a phrasing that appears to have been originated by former Judge Sofaer in Hayes v. City University of New York, 503 F.Supp. 946, 963 (S.D.N.Y.1980), aff'd on other grounds sub nom. Hayes v. Human Resources Administration, 648 F.2d 110 (2d Cir.1981), vacated on other grounds, 487 U.S. 1229, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988).[8] See also In re Turner, 309 F.2d 69, 72 (2d Cir.1962) ("substantial possibility of success").
 
 
 22
 In addition to "probability" and "substantial possibility" of success, courts have used a variety of other formulations to give some sense of the degree to which a "likelihood of success" must be shown. See John Y. Gotanda, "The Emerging Standards for Issuing Appellate Stays," 45 Baylor L.Rev. 809 (1993). We set forth a few of these formulations in the margin.[9]
 
 
 23
 Ultimately, we see considerable merit in the approach expressed by the District of Columbia Circuit: "The necessary `level' or `degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir.1977). Applying this test, that Circuit has granted a stay pending appeal where the likelihood of success is not high but the balance of hardships favors the applicant, id., and has stated that a stay may be granted where the probability of success is "high" and "some injury" has been shown, Cuomo v. United States Nuclear Regulatory Commission, 772 F.2d 972, 974 (D.C.Cir.1985). As the Sixth Circuit has explained, "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[] will suffer absent the stay. Simply stated, more of one excuses less of the other." Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir.1991) (citation omitted); see also Ofosu v. McElroy, 98 F.3d 694, 703 (2d Cir. 1996) (four stay factors "weigh[ed]").[10]
 
 
 24
 In the context of a stay of removal of an alien pending appeal of an adverse habeas decision, the gravity of the injury to the alien if a stay is denied, compared to the lesser "injury" to the Government if one alien is permitted to remain while an appeal is decided, suggests that the degree of likelihood of success on appeal need not be set too high.[11] For that reason, at least in this context, we understand the Dubose formulation of "less than a likelihood of success" to mean something less than 50 percent. If the likelihood were more than 50 percent, the appellant would be required to persuade the stay panel that he was more likely than not to win the appeal before the merits panel, just to obtain the critical opportunity to maintain the status quo until the merits panel considers the appeal.
 
 
 25
 III. Application of Stay Criteria to Mohammed's Appeal
 
 
 26
 Having come thus far, we reach the decisive issue of whether, as Judge Gleeson apprehended, our decision in Domond remains binding authority that precludes a substantial possibility of success for Mohammed on his appeal. Precisely like Domond, Mohammed committed his crime prior to the repeal of section 212(c) but was convicted after its repeal. In Domond, we explicitly noted the Supreme Court's instruction in Landgraf that "`reasonable reliance'" and "`settled expectations'" provide "guidance in determining retroactive effect," Domond, 244 F.3d at 85 (quoting Landgraf, 511 U.S. at 270, 114 S.Ct. 1483), and concluded, as we had previously observed in St. Cyr v. INS, 229 F.3d 406 (2d Cir.2000), aff'd, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), that "`[i]t would border on the absurd'" to suppose that an alien might have been deterred from committing a crime had he known that, in addition to the prospect of imprisonment and deportation following release, he could not ask for discretionary relief from deportation. Domond, 244 F.3d at 84 (quoting St. Cyr, 229 F.3d at 418).[12]
 
 
 27
 The Supreme Court's affirmance of our decision in St. Cyr affords no basis for thinking that Mohammed has a substantial possibility of a successful appeal. The crucial fact in St. Cyr was that the alien had entered a plea of guilty prior to the legislative changes that rendered section 212(c) relief unavailable. The Supreme Court, agreeing with our Court, ruled that the plea agreements of aliens who were considering whether to plead guilty to an offense that rendered them deportable "were likely facilitated by the aliens' belief in their continued eligibility for § 212(c) relief" and that depriving them of the possibility of such relief "would surely be contrary to `familiar considerations of fair notice, reasonable reliance, and settled expectations.'" St. Cyr, 533 U.S. at 323, 121 S.Ct. 2271 (quoting Landgraf, 511 U.S. at 270, 114 S.Ct. 1483). Mohammed, who was convicted after section 212(c) relief became unavailable, has no basis for claiming similar reliance.
 
 
 28
 Judge Gleeson suggested that the Supreme Court's statement in St. Cyr noting "a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation," St. Cyr, 533 U.S. at 325, 121 S.Ct. 2271, undermines our statement in Domond that both before and after AEDPA "[d]eportation was always the consequence," Domond, 244 F.3d at 86. See Mohammed, 205 F.Supp.2d at 45-46. We think the Domond quotation has been taken too literally. The panel was obviously aware that, prior to AEDPA, section 212(c) relief often spared an alien from being removed from this country. The panel's statement is properly understood to mean only that an order for deportation was always imposed, even though not always carried out. In any event, the Supreme Court's focus on the shift from possible to certain deportation was explicitly tied to the alien's reliance on the prior availability of discretionary relief in deciding whether to plead guilty.
 
 
 29
 We conclude, at least for purposes of considering the pending motion to lift the stay, that Domond remains binding authority in this Circuit and that Mohammed therefore does not have a substantial possibility of prevailing on his appeal. For that reason, a stay pending appeal is not warranted, and the Government's motion to lift the stay is granted. However, because of the possibility that the Supreme Court might interpret its St. Cyr opinion more expansively than we have, we will delay issuance of our mandate for 30 days to afford Mohammed an opportunity to seek a further stay from the High Court.
 
 Conclusion
 
 30
 The motion to lift the stay is granted. The mandate will issue in 30 days.
 
 
 
 Notes:
 
 
 [1]
 Mohammed also received a concurrent one-year sentence for the misdemeanor offense of unauthorized use of a motor vehicle. He had previously been convicted on a federal charge in connection with obtaining title for a stolen automobile with an altered vehicle identification number
 
 
 [2]
 Neither party has considered whether the appropriate procedure for challenging an order granting a stay pending appeal is a motion to lift the stay or an appeal from the order. In the absence of attention to the issue, we will assume that the Government's motion is a suitable device
 
 
 [3]
 Part IV, entitled "Inspection, Apprehension, Examination, Exclusion, and Removal," comprises 8 U.S.C. §§ 1221-1231
 
 
 [4]
 The Government contends that if "enjoins" in subsection 242(f)(2) does not apply to a stay pending appeal, aliens might be unable to appeal the denial of a district court's stay for lack of appellate jurisdiction under 28 U.S.C. § 1292(a)(1), providing jurisdiction over appeals from interlocutory orders granting or refusing injunctions. This is a somewhat surprising argument for the Government to make in view of its use in this case of a motion tolift the District Court's stay, rather than an appeal under subsection 1292(a)(1). Although no rule provides for such a motion, Rule 8 of the Federal Rules of Appellate Procedure explicitly allows for a motion to obtain a stay pending appeal. Moreover, even if Rule 8 were not available following a notice of appeal of a denial of a habeas petition, it is by no means clear that the word "enjoin[s]" in subsection 242(f)(2) must be completely congruent with all prohibitions that constitute "injunctions" for purposes of subsection 1292(a)(1).
 
 
 [5]
 AsAndreiu pointed out, the House Report explains that: section 242(f) prevents courts from enjoining "`procedures established by Congress to reform the process of removing illegal aliens,'" the procedures may be challenged, the procedures remain in force during such challenges, and in individual cases "`courts may issue injunctive relief pertaining to the case of an individual alien.'" Andreiu, 253 F.3d at 481 n. 1 (quoting H.R.Rep. No. 104-469(I), at 161 (1996)); see also Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 481-82, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (observing in dictum that section 242(f) prohibits federal courts from granting classwide injunctive relief against the operation of certain INA provisions but that this ban did not extend to individual cases). The legislative history of section 242(f) says nothing about stays pending appeal.
 
 
 [6]
 It has been said that "[t]he standard for evaluating stays pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction."Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir.1983). Although that may be true in some contexts, the statement does not take into account the fact that a preliminary injunction will last until the end of the trial, often a considerable length of time after issuance, whereas a stay pending appeal, at least in the case of an expedited appeal, might last for a very brief interval.
 
 
 [7]
 When courts refer to "a probability of success," they are presumably using the word "probability" (or its cognate "probable") in the sense of a substantial degree of likelihood, rather than in the sense of some ratio of the likelihood of a particular outcome to a number of possible outcomesSee Webster's Third New International Dictionary "probability" (1993) ("1: the quality or state of being probable"; "3a(1) the ratio of the number of outcomes in an exhaustive set of equally likely outcomes that produces a given event to the total number of possible outcomes"). The latter sense would be entirely unhelpful in assessing likelihood since "a probability" in that sense could range anywhere between 0 and 100.
 
 
 [8]
 Judge Sofaer, considering whether a district court should grant a stay pending appeal, was properly concerned about setting too high a standard, mindful of the fact that in such circumstances the trial judge is being asked to assess the likelihood that the ruling just made will be rejected on appealSee Hayes, 503 F.Supp. at 963. Although an appellate court, asked to issue a stay pending appeal, has not adjudicated the merits and therefore lacks the inhibiting concern that worried Judge Sofaer, the same formulation has often been repeated as the standard for an appellate court. See, e.g., Hirschfeld v. Board of Elections, 984 F.2d 35, 39 (2d Cir.1993).
 
 
 [9]
 United States v. Hamilton, 963 F.2d 322, 323 (11th Cir.1992) ("a probable likelihood of success"); SIPC v. Blinder, Robinson & Co., 962 F.2d 960, 968 (10th Cir.1992) ("a strong position on the merits"); Philippines v. Westinghouse Electric Corp., 949 F.2d 653, 658 (3d Cir.1991) ("a strong showing that [applicant] is likely to succeed"); Technical Publishing Co. v. Lebhar-Friedman, Inc., 729 F.2d 1136, 1138 (7th Cir.1984) ("reasonable likelihood of success"); Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir.1977) ("substantial indication of probable success").
 
 
 [10]
 In the context of a trial court considering a preliminary injunction, Judge Posner has endeavored to structure more precisely the relationship between probability of success and balance of hardships. He suggests that the injunction should issue "only if the harm to the plaintiff if the injunction is denied, multiplied by the probability that the denial would be an error (that the plaintiff, in other words, will win at trial), exceeds the harm to the defendant if the injunction is granted, multiplied by the probability that granting the injunction would be an error."American Hospital Supply Corp. v. Hospital Products Ltd., 780 F.2d 589, 593 (7th Cir.1986). He cautions, however, that his formula "is intended not to force analysis into a quantitative straitjacket but to assist analysis by presenting succinctly the factors that the court must consider in making its decision and by articulating the relationship among the factors." Id.
 
 
 [11]
 Although the Government contends that any delay in accomplishing Mohammed's removal "injures" the United States, the gap of more than ten weeks between the District Court's continuation of the stay and the Government's motion to lift the stay substantially weakens such an argument
 
 
 [12]
 The lineage of the internal quote can be traced back toLaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir.1998).