**Azam HANIF, Plaintiff,**

v.

**Mary Ann GANTNER, New York District Director, U.S. Citizenship and Immigration Services; Michael Chertoff, Secretary, Department of Homeland Security; Greg Kendrick, Newark District Field Director, U.S. Immigration and Customs Enforcement; Department of Homeland Security; U.S. Citizenship and Immigration Services; and U.S. Immigration and Customs Enforcement, Defendants.**

**No. 05 CV 4001(VM).**

United States District Court, S.D. New York.

May 11, 2005.

Matthew Guadagno, Bretz & Coven, New York City, for Plaintiff.

James Loprest, U.S. Attorney's Office, S.D.N.Y., New York City, for Defendant.

## DECISION AND AMENDED ORDER

MARRERO, District Judge.

Plaintiff Azam Hanif ("Hanif") commenced this action by order to show cause requesting that the Court stay his removal to Pakistan and compel Mary Ann Gantner ("Gantner"), New York District Director of United States Citizenship and Immigration Services ("CIS"), and those acting under her to adjudicate Hanif's application to adjust his immigration status to that of a lawful permanent resident. The Court held a hearing on this matter on April 25, 2005 (the "April 25th Hearing"). By Order dated April 29, 2005 (the "April 29th Order"), the Court denied Hanif's requests and dismissed this action in its entirety. The Court hereby amends the April 29th Order to rule exclusively that this action is dismissed based on a lack of subject matter jurisdiction, without ruling on the merits. The Court sets forth below the specific findings, reasoning, and conclusions underlying the April 29th Order and the Court's amendment thereto.

1. The following factual summary, unless otherwise noted, is based on Hanif's uncontested representations set forth in the Complaint dated April 20, 2005, the Affirmation of Matthew Guadagno in Support of Plaintiff's Application for a Temporary Stay of Removal dated April 20, 2005 ("Guadagno Affirm.") and all the exhibits attached thereto, and the Memorandum of Law in Support of Plaintiff's

## I. BACKGROUND [1]

Hanif is a citizen of Pakistan who entered the United States on December 24, 1992. Although he used a fraudulent passport in order to travel to the United States, Hanif did not present that passport to immigration officials in the United States. Instead, he stated that he wished to apply for asylum and was paroled into the United States for the purpose of applying for that benefit.

An Immigration Judge denied Hanif's asylum application on September 27, 1994 and ordered him excluded based on his lack of valid entry documents. Hanif did not appeal that order and, as a result, the order became administratively final thirty days after it was issued. See 8 U.S.C. § 1101(a)(47)(B)(ii) (providing that a removal order becomes final upon "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals"); 8 C.F.R. § 1240.15 (providing that "[a]n appeal [of a removal order] shall be filed within 30 calendar days after the mailing of a written decision, the stating of an oral decision, or the service of a summary decision.").

Hanif remained in the United States illegally after being ordered excluded. On July 7, 2002, Hanif married a naturalized United States citizen, Shahida Parveen ("Parveen"). Parveen filed a visa petition on Hanif's behalf on December 16, 2002. On May 26, 2004, that petition was approved.[2]

Request for a Stay of Removal dated April 20, 2005 ("Pl.'s Mem.").

2. The approval of Parveen's petition did not legalize Hanif's status, but satisfied one of several criteria that Hanif would have to satisfy in order to be eligible to adjust his status to that of a lawful permanent resident. See 8 U.S.C. § 1255(a).

On or about April 5, 2005, for reasons that neither Hanif nor the Government states, United States Immigration and Customs Enforcement ("ICE") investigators went to Hanif's home and questioned Hanif's family as to his whereabouts. Hanif was not home at the time. On or about April 8, 2005, Hanif applied to adjust his status to that of a lawful permanent resident. On April 14, 2005, having been informed by his family that ICE was looking for him, Hanif turned himself in to the ICE Investigations Unit in New York City. At that time, he provided ICE officers with his Pakistani passport and submitted an application for an administrative stay of removal ("Form I–246"), along with copies of his adjustment of status application and other documents.

According to Hanif, the ICE officers with whom Hanif met represented to him that they lacked authority to consider his request for a stay of removal. Hanif was taken into ICE custody and placed in detention in New Jersey. Hanif represents that ICE officers indicated that they intended to deport him, by executing his prior exclusion order, as soon as travel arrangements could be made.

## II. *DISCUSSION*

### A. *JURISDICTION TO CONSIDER REQUEST FOR STAY OF REMOVAL*

■ "A plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States,* 319 F.3d 550, 554 (2d Cir.2003) (citing *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)). The Court finds that Hanif has not met that burden in this case. Hanif asserts that the Court has jurisdiction over his request for a stay of removal under 28 U.S.C. § 1331 ("Section 1331"). Section 1331 grants jurisdiction to federal courts over cases "arising under" federal law. Hanif claims that "this action arises under the Administrative Procedure Act ... and the [Immigration and Nationality Act] and regulations implementing it." (Compl.¶ 5.) Specifically, Hanif asserts that the instant action arises under the sections of the Administrative Procedure Act ("APA") codified at 5 U.S.C. §§ 702 ("Section 702") and 704 ("Section 704"). (*See* Compl. ¶ 5.) Section 702 provides a cause of action against the government to "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Section 704 provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704.

In order to determine whether or not the Court has jurisdiction over Hanif's stay request pursuant to Section 1331 in conjunction with the APA and the INA, it is necessary first to identify the "agency action" that Hanif challenges here. Hanif explicitly states that he "is not challenging his order of exclusion." (Plaintiff's Reply Brief to the Government's Opposition to His Request for a Stay of Removal at 2.) Instead, with respect to his request for a stay, Hanif characterizes the agency action he is challenging as "the defendants' decision to deport him without adjudicating his application for adjustment of status." (Compl.¶ 6.) Because Hanif has made it clear that he does not seek to challenge the validity of his exclusion order, the Court interprets the phrase, "the defendants' decision to deport him," to refer to the decision to execute the exclusion order, rather than the decision to enter that order in the first place.

■ Hanif alleges that he "has been adversely affected by the defendants' deci-

sion to deport him without adjudicating his application for adjustment of status." (Compl.¶ 6.) In order to show that that decision has adversely affected him "within the meaning of a relevant statute," 5 U.S.C. § 702, Hanif must demonstrate that the interest he asserts in this case is "arguably within the zone of interests to be protected or regulated by the statute ... in question." *Knowles v. U.S. Coast Guard*, 924 F.Supp. 593, 599 (S.D.N.Y. 1996) (quoting *Sullivan v. Syracuse Housing Auth.*, 962 F.2d 1101, 1106 (2d Cir. 1992) (internal quotation marks omitted)). "The question under the zone-of-interests test of § 702 is simply whether the language of the statutes invoked by the plaintiff or the supporting legislative history suggests a congressional intent to permit the plaintiff's suit." *Federation for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 902 (D.C.Cir.1996). This test "is not meant to be especially demanding; in particular there need be no indication of congressional purpose to benefit the would-be plaintiff." *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399–400, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). Nevertheless, the zone-of-interests test "denies the right of review if the plaintiffs' interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit suit." *Id.* at 399, 107 S.Ct. 750.

■ The statute in question here is the INA. (*See* Compl. ¶ 8.) Hanif's claims are related in part to INA § 245(a), codified at 8 U.S.C. § 1255(a), which governs adjustment of status, or the process by which an alien obtains lawful permanent residence in the United States. Given that the purpose of this statutory provision is to enable qualified individuals to become lawful permanent residents of the United States, it is at least arguable that, under some circum-

stances, agency action that adversely impacts an individual's ability to apply for or obtain lawful permanent residence could be construed as falling within the zone of interests protected or regulated by the INA. *See, e.g., Yu v. Brown*, 36 F.Supp.2d 922 (D.N.M.1999) (interests of class of individuals requesting court to compel Immigration and Naturalization Service to act on their applications for Special Immigrant Juvenile Status and for adjustment of status to lawful permanent residence fell within zone of interests protected by the INA).

Hanif, however, does not address whether or not the instant action satisfies the zone-of-interests test. Moreover, there are reasons to doubt that it does. Although that test does not require a "congressional purpose to benefit the would-be plaintiff," *Clarke*, 479 U.S. at 399–400, 107 S.Ct. 750, it is at least arguable that Hanif's interest in the adjudication of his adjustment application—which was filed less than two weeks before the commencement of this action—prior to the execution of his twelve-year-old, unchallenged removal order, is "inconsistent with the purposes implicit in the [INA]." *Id.* at 399, 107 S.Ct. 750. *See, e.g., Ulysse v. Department of Homeland Security*, 291 F.Supp.2d 1318 (M.D.Fla.2003) (noting purpose of INA "to remove illegal aliens as quickly as possible"). Because Hanif has not addressed such issues, nor provided any argument that the interests he seeks to protect by means of this action fall within the zone of interests of the INA, the Court concludes that he has failed to meet his burden to prove that the Court has jurisdiction over this case under Section 1331 in conjunction with the APA and the INA.

Hanif has also failed to argue that this action satisfies the finality requirement set forth in Section 704 of the APA. "The 'core question' for determining finality is 'wheth-

er the agency has completed its decision-making [sic] process and whether the result of that process is one that will directly affect the parties.' " *Lunney,* 319 F.3d at 554 (quoting *Dalton v. Specter,* 511 U.S. 462, 470, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994)). Although the agency action that Hanif seeks to enjoin in this case, the order of removal, is administratively final, Hanif does not seek judicial review of that action. The APA section invoked by Hanif, though, pertains only to judicial review. Hanif does not address whether or how Section 704 might enable him to request that an agency action be enjoined without simultaneously requesting judicial review of that action, or without linking the requested injunction to a need to preserve the status quo pending the Court's review of some other agency action.[3]

Other plaintiffs seeking a judicial stay of a removal order without challenging the validity of the order itself have framed their cases as requests for judicial review of adverse agency actions such as the denial of a request for a stay of removal or the denial of a motion to reopen removal proceedings. *See, e.g., Acosta v. Gaffney,* 558 F.2d 1153 (3d Cir.1977); *Chen v. Ashcroft,* No. 03 Civ. 8117, 2003 WL 22595289 (S.D.N.Y. Nov.7, 2003). Although Hanif did request an administrative stay of removal, he does not seek judicial review of or explicitly challenge any agency action that was taken with respect to that request. Nor does it appear, based on Hanif's representations, that any action taken with respect to that request would qualify as final for purposes of the APA.[4]

Thus, Hanif has also failed to meet his burden of proof with respect to the APA's finality requirement. Therefore, the Court finds that it lacks subject matter jurisdiction under Section 1331 over Hanif's request of a stay of removal.

■■ Hanif also claims that the Court has jurisdiction over his request for a stay of removal under 8 U.S.C. § 1361 ("Section 1361"). Section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of

---

3. As indicated above, Hanif seeks the requested injunction in order to preserve the status quo pending the adjudication of his adjustment of status application. Hanif does not, however, indicate that the requested injunction is necessary to preserve the status quo pending the Court's review of any agency action. Therefore, if an injunction were warranted in this case, the Court would only have jurisdiction to grant such relief in conjunction with its jurisdiction to compel the adjudication of the adjustment of status application. As explained below, however, the Court concludes that it lacks jurisdiction to issue the requested writ of mandamus.

4. Hanif attempted to apply for an administrative stay of removal pursuant to 8 C.F.R. § 241.6(a). That provision states that " "[a]ny request of an alien under a final order of deportation or removal for a stay of deportation or removal shall be filed on Form I–246, Stay of Removal, with the district director having jurisdiction over the place where the alien is at the time of filing." " 8 C.F.R. § 241.6(a). As indicated above, Hanif represents that he attempted to file a Form I–246 with the ICE Investigations Unit in New York City, but that the ICE officials to whom he presented it refused to accept it. According to Hanif, "[t]he officers indicated that: (1) they did not have authority to consider a stay request; (2) they were unaware that such a procedure existed; and (3) they indicated that they had no discretion whether or not to detain him." (Guadagno Affirm. ¶ 26.) Hanif does not state whether or not he made additional attempts to obtain a stay of removal through administrative processes. Neither Hanif nor the Government addresses the issue of whether or not the ICE officers with whom Hanif spoke did in fact possess authority to consider Hanif's stay application. It is questionable whether the ICE officers' refusal to accept jurisdiction of his application for a stay constitutes an "agency action," let alone one that is final.

the United States or any agency thereof to perform a duty owed to plaintiff." According to Hanif, his action "to compel defendants Chertoff and ICE to permit CIS to carry out its duty by not removing [him] until after a determination on his application for adjustment of status has been made," (Compl.¶ 2), falls under the Court's mandamus jurisdiction. A writ of mandamus under Section 1361, however, "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Although CIS may owe Hanif a nondiscretionary duty to adjudicate his adjustment of status application at some point in time, *see, e.g., Yu v. Brown*, 36 F.Supp.2d 922, 931 (D.N.M.1999) (stating in immigration context that, although courts "cannot compel an agency to exercise its discretion in a particular manner ... administrative agencies do not possess the discretion to avoid discharging the duties that Congress intended them to perform. Thus, a court may require an agency to take action upon a matter, without directing how it shall act." (citations and internal quotation marks omitted)), Hanif has provided no authority or argument for the proposition that ICE has a nondiscretionary duty not to remove Hanif until CIS has fulfilled that duty, or, conversely, that CIS must fulfill that duty prior to ICE's execution of the removal order. Therefore, Hanif has also failed to demonstrate that the Court has subject matter jurisdiction over his request for a stay of removal under Section 1361.

**B.  *REQUEST FOR STAY OF REMOVAL***

■ Even if the Court had jurisdiction over Hanif's claims, a ruling in his favor would not be warranted. Hanif and the Government disagree with respect to the standard that governs Hanif's request for a stay of removal.[5] Even applying the

---

**5.** The Government applies three different standards of review for granting a stay without taking a position as to which standard governs or addressing why, in its view, the standard used by Hanif does not apply. First, the Government applies the test stated at 8 U.S.C. § 1252(f)(2) ("Section 1252(f)(2)"), which provides that "no court shall enjoin the removal of any alien pursuant to a final order ... unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." The Second Circuit, in *Mohammed v. Reno*, 309 F.3d 95 (2d Cir.2002), determined that Section 1252(f)(2) does not apply to actions seeking the stay of a removal order pending an appeal of that order. The court based this conclusion in part on its determination that the term "enjoin," as it is used in Section 1252(f)(2), refers to "a permanent prohibition," rather than "an interim prohibition." *Mohammed*, 309 F.3d at 99. Because Hanif does not seek a permanent prohibition, *Mohammed* appears to imply that Section 1252(f)(2) does not apply to his case. Nevertheless, it is not clear that the standard of review set forth in *Mohammed* would apply either since, for example, the petitioner in that case sought to stay his removal pending an appeal of the removal order, whereas Hanif seeks to stay his removal pending a collateral proceeding, *i.e.*, the adjudication of his adjustment application.

The second test the Government applies to Hanif's stay request is the traditional test for injunctive relief, which, according to the Government, would require Hanif to show a "substantial likelihood" of success on the merits of his claim. (*See* Letter from Assistant United States Attorney F. James Loprest, Jr. to the Court of 4/27/05 at 3 (citing *inter alia, Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996)).) Finally, the Government considers whether Hanif merits "equitable relief." (*Id.* at 8.)

The Court need not decide which of these tests applies in this case because, in addition to the fact that the Court has determined that it lacks subject matter jurisdiction, it has determined that, if it were to rule on the merits, Hanif's claims would fail under even the most lenient test, that articulated in *Mohammed*.

standard proposed by Hanif, the Court concludes that the facts in this case would not warrant a stay.

Hanif asserts that the test established by the Second Circuit in *Mohammed v. Reno,* 309 F.3d 95 (2d Cir.2002), applies to his case. In *Mohammed,* the Court of Appeals stated that four criteria are relevant to deciding a request for a stay of removal pending an appeal of a denial of a habeas petition: "the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest." *Mohammed,* 309 F.3d at 100 (citing *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)). Further specifying the meaning of the first of these considerations, the court stated that it found "considerable merit in the approach expressed by the District of Columbia Circuit: 'The necessary level or degree of possibility of success will vary according to the court's assessment of the other [stay] factors.'" *Id.* at 101 (quoting *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977)). Applying this approach to the case before it, the *Mohammed* court found that, "[i]n the context of a stay of removal of an alien pending appeal of an adverse habeas decision, the gravity of the injury to the alien if a stay is denied, compared to the lesser 'injury' to the Government if one alien is permitted to remain while an appeal is decided, suggests that the degree of likelihood of success on appeal need not be set too high." *Id.* at 102.

In the instant case, the "likelihood of success" factor requires the Court to consider how likely it is that CIS would approve Hanif's application for adjustment of status. Hanif argues that he has "a substantial possibility of success," (Pl.'s Mem. at 10), with respect to his adjustment application.[6] In support of this contention, Hanif states that he is "prima facie eligible for adjustment of status pursuant to [8 U.S.C. § 1255(a)]," (Pl.'s Mem. at 10), because he was paroled into the United States and has an immediately available visa. He also states that his order of exclusion does not bar him from adjusting his status.

Hanif does not, however, address how other violations of the law, the commission of which he has admitted, would affect his prospects for success on his adjustment application. In addition to being ordered excluded, Hanif failed to comply with the exclusion order, instead remaining unlawfully in the United States for more than twelve years. Hanif also admits that he worked without authorization, fraudulently obtained a social security card and driver's license under a pseudonym, and procured a fraudulent passport in order to travel to the United States, though he did not present that passport to immigration officials upon arrival in the United States.

Further, Hanif does not address how his apparent lack of diligence in attempting to legalize his status would affect the likelihood that his adjustment application would be granted. Although Hanif reserved the right to appeal the Immigration Judge's denial of his asylum application, he never actually appealed that decision, nor has he offered any explanation for that failure. In addition, Hanif waited more than ten months after the approval of his wife's visa petition, which enabled him to take further steps to attempt to legalize his immigration status, to take such steps by filing his

---

**6.** The Government does not address the likelihood that Hanif's adjustment application would be approved.

adjustment application. Again, Hanif does not offer any explanation for this delay.

Beyond these factors, one overriding consideration precludes the Court from being able to find more than an extremely slim possibility, if any, that Hanif's adjustment application would be granted (and also presents a possible explanation for Hanif's failure to apply for adjustment sooner after the approval of his wife's petition): the notice approving Hanif's wife's petition states that "[t]he evidence indicates that [Hanif] is not eligible to file an adjustment of status application. This determination is based on the information submitted with the petition and any relating files." (Approval Notice, attached as Ex. A to Guadagno Affirm.) The approval notice instructs the petitioner that, "[i]f the person for whom [he or she is] petitioning believes that he or she is eligible for adjustment of status, then he or she should contact the local INS office," and advises that "[b]ecause the person for whom [the petitioner] is petitioning is not eligible to adjust, we have sent the approved petition to the Department of State National Visa Center," which processes visa applications for individuals residing outside the United States. (*Id.*)

Hanif does not offer any reason to doubt the validity of this determination that he is not eligible for, let alone likely to be granted, adjustment of status. Given Hanif's prior order of exclusion, his failure to comply with that order, his admission to having committed several acts of fraud, his apparent lack of diligence in attempting to legalize his status, and the explicit determination by CIS that he is not eligible for adjustment of status, the Court finds that there is little to no possibility that his adjustment application would be approved.

The remaining factors to be considered pursuant to *Mohammed* do not weigh heavily enough in Hanif's favor to counterbalance such a slim possibility of success on the merits of his adjustment application. Even assuming that Hanif's removal to Pakistan would result in irreparable harm to him, that harm does not appear to be sufficiently severe, based on Hanif's representations to the Court, to weigh significantly in favor of granting the relief requested. The Court acknowledges the Second Circuit's view that "[o]rdinarily, . . . it is deemed that exclusion is an irreparable harm, and that the INS suffers no offsetting injury." *Ofosu v. McElroy*, 98 F.3d 694, 699 (2d Cir.1996) (citing *Michael v. INS*, 48 F.3d 657, 664 (2d Cir.1995)). In addition, Hanif claims that, "because he has been in the United States unlawfully for more than one year, he is likely to be deemed subject to the ten year bar on reentry after his removal." (Pl.'s Mem. at 6 (citing 8 U.S.C. § 1182(a)(9)(B)[7])). Beyond the injury inherent to the removal of any person who has established a life in the United States and has little chance of being able to return in the near future, though, Hanif does not point to any additional harm that he would suffer if removed.[8]

---

**7.** 8 U.S.C. § 1182(a)(9)(B)(i)(II) provides that any alien (other than an alien lawfully admitted for permanent residence) who "has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible." 8 U.S.C. § 1182(a)(9)(B)(v) provides for a discretionary waiver of this ten-year bar "in the case of

an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien."

**8.** The Government does not argue that it would be harmed by the granting of a stay.

Hanif argues that it is in the public interest to stay his removal because a stay would promote one of the "goals of the Immigration and Nationality Act: family unity." (Pl.'s Mem. at 14.) According to Hanif, his removal to Pakistan would result in his wife's separation from her family because she intends to accompany him to Pakistan if he is removed. The Government, on the other hand, points out that the Second Circuit has stated that "[t]here is a strong public interest in compliance with the immigration laws by aliens who seek the protection of those laws. In deciding whether to grant or deny a stay of exclusion, an alien's non-cooperation is a [sic] important fact." *Ofosu*, 98 F.3d at 702. Hanif counters that he "has self-surrendered and permitted the ICE officers to question him regarding false identity documents he has used to gain employment." (Pl.'s Mem. at 14.) Although Hanif has recently begun to comply with the immigration laws by surrendering to ICE, he had, for the previous twelve years, failed to comply with those and other laws by remaining in the United States unlawfully, working without authorization, and committing fraud. In addition, Hanif admits that his recent compliance is the direct result of ICE's attempt to find him at his home.

Hanif further contends that "[g]ranting the stay of removal would also serve the public interest because it is in the public's interest that the judiciary insures that the Government is complying with the law." (*Id.*) Hanif does not, however, specify how granting a stay in this case would ensure that the Government complies with the law or how the failure to grant such a stay would permit non-compliance.

Thus, the remaining *Mohammed* factors do not weigh heavily enough in favor of granting a stay in this case to counterbalance the Court's finding that there is little to no possibility of success on the merits of Hanif's adjustment application. Therefore, the Court finds that, even if Hanif had met his burden to establish the Court's jurisdiction over this case, the relief he seeks would not be warranted.

Because a stay of removal is not warranted in this case, and Hanif's removal will moot his application for adjustment of status, the Court declines to address the merits of his request for a writ of mandamus compelling CIS to adjudicate that application. Accordingly, it is hereby

**ORDERED** that the Court's Order dated April 29, 2005 (the "April 29th Order") denying the request of plaintiff Azam Hanif ("Hanif") for an order compelling defendants to adjudicate his application for adjustment of status and restraining defendants from removing him to Pakistan prior to adjudicating his application for adjustment of status, and dismissing this action in its entirety with prejudice is amended to rule exclusively that the Court lacks subject matter jurisdiction over this action and to dismiss this action on that basis alone, and it is further

**ORDERED** that the April 29th Order is amended to incorporate the above findings, reasoning and conclusions.

**SO ORDERED.**