KENYERES *v.* ASHCROFT, ATTORNEY GENERAL,
ET AL.

No. 02A777.   Decided March 21, 2003

JUSTICE KENNEDY, Circuit Justice.

This case is before me on an application for a stay of an alien's removal from the United States.

Applicant, Zsolt Kenyeres, is a citizen of the Republic of Hungary. On January 29, 1997, he entered the United States on a tourist visa, which permitted him to remain in the country through July 28, 1997. Applicant remained past the deadline without authorization from the Immigration and Naturalization Service (INS), and on June 21, 2000, the INS initiated removal proceedings, alleging the overstay. Applicant sought asylum under 94 Stat. 105, as amended, 8 U. S. C. § 1158(a), withholding of removal under 110 Stat. 3009–602, 8 U. S. C. § 1231(b)(3), and deferral of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U. N. T. S. 85, 23 I. L. M. 1027, see 8 CFR § 208.17 (2002). An Immigration Judge held applicant to be removable; but the Bureau of Immigration Appeals (BIA) concluded that the judge failed to provide sufficient explanation for his decision, and remanded the case.

On remand the Immigration Judge determined that Kenyeres' asylum application was untimely under 8 U. S. C. § 1158(a)(2)(B), and that he could not make a showing of changed circumstances or extraordinary conditions necessary to excuse the delay, see § 1158(a)(2)(D). As to withholding of removal, the judge ruled this relief was unavailable because of "serious reasons to believe that the alien committed a serious nonpolitical crime outside the United States before the alien arrived in the United States." § 1231(b)(3)(B)(iii).

The INS presented sufficient evidence that applicant was wanted in Hungary on charges of embezzlement, which is a serious nonpolitical crime. See *In re Castellon*, 17 I. & N. Dec. 616 (BIA 1981). Noting applicant's concession that he overstayed his visa, the Immigration Judge ordered him

removed on account of this violation. (Applicant has withdrawn his application for deferral of removal under the Convention Against Torture.) The BIA affirmed the Immigration Judge's order without opinion.

Applicant sought review by the Court of Appeals for the Eleventh Circuit and requested a stay of removal pending review. The Court of Appeals denied the stay. No. 03–10845–D (Mar. 14, 2003). The court relied on 8 U. S. C. § 1252(f)(2), which provides that "no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." The Court of Appeals relied on its decision in *Weng* v. *Attorney General*, 287 F. 3d 1335 (2002) *(per curiam)*, which holds that the evidentiary standard prescribed by § 1252(f)(2) applies to motions for a temporary stay of removal pending judicial review.

Kenyeres has filed with me as Circuit Justice an application for a stay of removal, arguing that the interpretation of § 1252(f)(2) adopted by the Court of Appeals is erroneous. By insisting that clear and convincing evidence be adduced in order to grant a stay, he maintains, the Eleventh Circuit in effect made judicial review unavailable in cases of asylum and withholding of deportation. He contends that an application for a stay should be assessed under a more lenient standard, one adopted by other Courts of Appeals. Their standard simply asks whether applicant has demonstrated a likelihood of success on the merits. Applicant submits he can satisfy this requirement and so a stay of removal should issue. I granted a temporary stay of the BIA order to enable the United States to respond to applicant's claims and to consider the matter.

The question raised by applicant indeed has divided the Courts of Appeals. The Courts of Appeals for the Second, Sixth, and Ninth Circuits have examined the matter, both

before and after the Eleventh Circuit's decision in *Weng*, and
have reached a contrary result. See *Andreiu* v. *Ashcroft*,
253 F. 3d 477 (CA9 2001) (en banc); *Bejjani* v. *INS*, 271 F. 3d
670 (CA6 2001); *Mohammed* v. *Reno*, 309 F. 3d 95 (CA2 2002).
In the cases just cited, these courts take the position that
the heightened standard of § 1252(f)(2) applies only to injunc-
tions against an alien's removal, not to temporary stays
sought for the duration of the alien's petition for review.
*Andreiu, supra,* at 479–483; *Bejjani, supra,* at 687–689; *Mo-
hammed, supra,* at 97–100.   These courts evaluate requests
for a stay under their traditional standard for granting in-
junctive relief in the immigration context, which seeks to
measure an applicant's likelihood of success on the merits
and to take account of the equity interests involved.   See
*Andreiu, supra,* at 483 ("[P]etitioner must show 'either (1) a
probability of success on the merits and the possibility of
irreparable injury, or (2) that serious legal questions are
raised and the balance of hardships tips sharply in the peti-
tioner's favor'" (quoting *Abassi* v. *INS*, 143 F. 3d 513, 514
(CA9 1998))); *Bejjani, supra,* at 688 (requiring a showing of
"(1) a likelihood of success on the merits; (2) that irreparable
harm would occur if a stay is not granted; (3) that the poten-
tial harm to the movant outweighs the harm to the opposing
party if a stay is not granted; and (4) that the granting of
the stay would serve the public interest" (quoting *Sofinet* v.
*INS*, 188 F. 3d 703, 706 (CA7 1999))); *Mohammed, supra,* at
101 ("'a substantial possibility, although less than a likeli-
hood, of success'" (quoting *Dubose* v. *Pierce*, 761 F. 2d 913,
920 (CA2 1985), vacated on other grounds, 487 U. S. 1229
(1988))).

   The courts on each side of the split have considered the
contrary opinions of their sister Circuits and have adhered
to their own expressed views.   See *Weng, supra,* at 1337,
n. 2; *Mohammed, supra,* at 98–99.   Both standards have
been a subject of internal criticism.   See *Andreiu, supra,* at
485 (Beezer, J., separately concurring); *Bonhomme-Ardouin*

v. *Attorney General*, 291 F. 3d 1289, 1290 (CA11 2002) (Barkett, J., concurring).

The issue is important. If the exacting standard of § 1252(f)(2) applies to requests for temporary stays, then to obtain judicial review aliens subject to removal must do more than show a likelihood of success on the merits. See *Addington* v. *Texas*, 441 U. S. 418, 425 (1979) (The "intermediate standard of clear and convincing evidence" lies "between a preponderance of the evidence and proof beyond a reasonable doubt"). An opportunity to present one's meritorious grievances to a court supports the legitimacy and public acceptance of a statutory regime. It is particularly so in the immigration context, where seekers of asylum and refugees from persecution expect to be treated in accordance with the rule-of-law principles often absent in the countries they have escaped. A standard that is excessively stringent may impede access to the courts in meritorious cases. On the other hand, § 1252(f)(2) is a part of Congress' deliberate effort to reform the immigration law in order to relieve the courts from the need to consider meritless petitions, and so devote their scarce judicial resources to meritorious claims for relief. Cf. *Reno* v. *American-Arab Anti-Discrimination Comm.*, 525 U. S. 471, 486 (1999). If the interpretation adopted by the Second, Sixth, and Ninth Circuits is erroneous, and § 1252(f)(2) governs requests for stays, this congressional effort will be frustrated. As of this point, applicant already has overstayed his visa by more than five years. Had the Eleventh Circuit granted the stay under the more lenient approach, months more would elapse before his case is resolved.

Given the significant nature of the issue and the acknowledged disagreement among the lower courts, the Court, in my view, should examine and resolve the question in an appropriate case. This, however, is not an appropriate case.

Applicant is unlikely to prevail in his request for a stay under either of the standards adopted by the Courts of Ap-

peals. Applicant argues that the Immigration Judge erroneously rejected his claim under the nonpolitical crime restriction of § 1231(b)(3)(B)(iii). He asserts that the Hungarian Government fabricated the embezzlement and fraud charges against him for political reasons. Whether these charges should be disregarded as fabricated depends on a question of fact. The Immigration Judge's findings in that respect are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." § 1252(b)(4)(B). Based on the record presented at the removal hearing, the Immigration Judge could find substantial grounds to believe that applicant committed serious financial crimes in Hungary. The record contains a translation of the Hungarian arrest warrant for embezzlement and aggravated fraud, as well as testimony that the warrant was obtained from Interpol, which the INS deems to be a reliable source. See App. E to Memorandum of Respondents in Opposition 100–101, 135–136. In his own testimony applicant did not dispute that he was engaged in money laundering for organized crime. See *id.*, at 111–112, 115–116, 120.

A reviewing court must uphold an administrative determination in an immigration case unless the evidence compels a conclusion to the contrary. *INS* v. *Elias-Zacarias*, 502 U. S. 478, 481, n. 1, 483–484 (1992); see also *INS* v. *Orlando Ventura*, 537 U. S. 12, 16 (2002) *(per curiam)*. Given the factual findings of the Immigration Judge and the evidence in the record, applicant is unable to establish a reasonable likelihood that a reviewing court will be compelled to disagree with the decision of the BIA. Applicant's claim is not sufficiently meritorious to create a reasonable probability that four Members of this Court will vote to grant certiorari in his case. See, *e. g.*, *Bartlett* v. *Stephenson*, 535 U. S. 1301, 1304–1305 (2002) (REHNQUIST, C. J., in chambers); *Lucas* v. *Townsend*, 486 U. S. 1301, 1304 (1988) (KENNEDY, J., in chambers). My assessment likely would be different in a case

where the choice of evidentiary standard applicable to a request for a stay could influence the outcome.

The stay previously granted is vacated, and the application for a stay is denied.