PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ESKEDAR TESHOME-GEBREEGZIABHER,
                        *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

                        *Respondent.*

No. 08-1060

On Petition for Review of an Order of
the Board of Immigration Appeals.

Argued: May 13, 2008

Decided: June 16, 2008

Before WILLIAMS, Chief Judge, SHEDD, Circuit Judge,
and Claude M. HILTON, Senior United States District Judge for
the Eastern District of Virginia, sitting by designation.

Motion to stay removal denied by published opinion. Judge Shedd
wrote the opinion, in which Chief Judge Williams and Senior Judge
Hilton joined.

## COUNSEL

**ARGUED:** Jason Alexander Dzubow, MENSAH, BUTLER & DZU-
BOW, PLLC, Washington, D.C., for Petitioner. Thomas Henderson
Dupree, Jr., UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent. **ON BRIEF:** Jeffrey S. Bucholtz,
Acting Assistant Attorney General, Civil Division, Carol Federighi,

Senior Litigation Counsel, Office of Immigration Litigation, Brianne Whelan Cohen, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

**OPINION**

SHEDD, Circuit Judge:

Eskedar Teshome-Gebreegziabher ("Teshome"), a native and citizen of Ethiopia, was ordered removed from the United States as an alien present without admission or parole. After exhausting her administrative appeals, Teshome filed a petition for review in this court. Concurrently, she filed a motion to stay her removal pending resolution of her petition for review. We scheduled Teshome's motion to stay for separate review in order to consider the novel issue of what standard governs our review of the motion. Having carefully considered the parties' arguments, we conclude that 8 U.S.C. § 1252(f)(2) provides the controlling standard for motions to stay removal, and we deny Teshome's motion to stay.

I

Prior to 1996, most deportation orders entered by the Board of Immigration Appeals ("BIA") were automatically stayed upon the filing of a petition for review in the court of appeals. *See* 8 U.S.C. § 1105a(a)(3) (1994). In those rare instances when a stay was not automatic, the courts evaluated a stay request pursuant to the traditional balancing test used for preliminary injunctions. *See, e.g., Jenkins v. INS*, 32 F.3d 11, 14 (2d Cir. 1994). However, "[i]n 1996, Congress made major changes to immigration law through the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ('IIRIRA'), Pub. L. No. 104-208, 110 Stat. 3009." *William v. Gonzales*, 499 F.3d 329, 330 (4th Cir. 2007). One of these changes was the elimination of the automatic stay of removal and the concomitant addition of a requirement that an alien seek a stay from the court of appeals. *See* 8 U.S.C. § 1252(b)(3)(B). Along with these changes, Congress enacted the following provision:

> Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

8 U.S.C. § 1252(f)(2).

The primary question now before us is whether the clear-and-convincing standard embodied in § 1252(f)(2) applies to an alien's motion to stay removal.[1] Both parties agree that § 1252(f)(2) prevents a court from "enjoining" an alien's removal unless the statutory standard is satisfied; however, they disagree as to whether a stay of removal constitutes an injunction for purposes of the statute.[2] The Government argues that it does and that we should evaluate Teshome's motion to stay under § 1252(f)(2), while Teshome contends that it does not and seeks the application of the preliminary injunction standard.

## A.

As with any question of statutory interpretation, "[o]ur first step . . . is to determine whether the language at issue has a plain and unam-

---

[1]The majority of circuits which have considered this issue have held that the traditional preliminary injunction balancing test rather than § 1252(f)(2) must be used. *Compare Tesfamichael v. Gonzales*, 411 F.3d 169 (5th Cir. 2005); *Hor v. Gonzales*, 400 F.3d 482 (7th Cir. 2005); *Douglas v. Ashcroft*, 374 F.3d 230 (3d Cir. 2004); *Lim v. Ashcroft*, 375 F.3d 1011 (10th Cir. 2004); *Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003); *Mohammed v. Reno*, 309 F.3d 95 (2d Cir. 2002); *Bejjani v. INS*, 271 F.3d 670 (6th Cir. 2001); *Andreiu v. Ashcroft*, 253 F.3d 477 (9th Cir. 2001) (en banc) (all adopting preliminary injunction standard) *with Weng v. U.S. Att'y Gen.*, 287 F.3d 1335 (11th Cir. 2002) (adopting statutory standard). In *Ngarurih v. Ashcroft*, 371 F.3d 182 (4th Cir. 2004), while not explicitly deciding the issue, we indicated that the statutory standard applies.

[2]Indeed, there can be no question that once "enjoin" is properly defined, the clear-and-convincing standard of § 1252(f)(2) controls, for Congress has provided that it must do so "notwithstanding any other provision of law."

biguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). We determine the "plainness or ambiguity of statutory language . . . by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. If the statute is unambiguous, "our inquiry into Congress' intent is at an end, for if the language is plain and the statutory scheme is coherent and consistent, we need not inquire further. Our sole function is to enforce the statute according to its terms." *William*, 499 F.3d at 333 (internal citations and punctuation omitted).

With these principles in mind, we turn to the text of § 1252(f)(2), focusing specifically on the word "enjoin." Because "enjoin" is undefined in the statute, we must accord the term its "ordinary, contemporary, common meaning, absent an indication Congress intended [it] to bear some different import." *DIRECTV, Inc. v. Nicholas*, 403 F.3d 223, 225 (4th Cir. 2005). "We customarily turn to dictionaries for help in determining whether a word in a statute has a plain or common meaning." *Nat'l Coal. for Students v. Allen*, 152 F.3d 283, 289 (4th Cir. 1998); *see also United States v. Harris*, 128 F.3d 850, 854 (4th Cir. 1997) (citing *Black's Law Dictionary* to ascertain meaning). In common parlance, "enjoin" means to require one "to perform, or to abstain or desist from, some acts," *Black's Law Dictionary* 529 (6th ed. 1990), and an injunction is "[a] court order prohibiting someone from doing some specified act," *id.* at 784. Similarly, "stay" is defined in relevant part as:

> a suspension of the case or some designated proceedings within it. It is a *kind of injunction* with which a court freezes its proceedings at a particular point.

*Id.* at 1413 (emphasis added). These definitions indicate that "stay" is a subset of the broader term "enjoin"; it is a "kind of injunction" directed at a judicial case or proceedings within it.[3]

---

[3]For example, in the instant case a stay would be directed toward removal proceedings which, once Teshome filed her petition for review, came within a judicial case.

This relationship between "enjoin" and "stay" is borne out in legislative and judicial use of these terms. For example, in the Anti-Injunction Act, Congress provided, "A court of the United States may not grant an injunction to stay proceedings in a State court. . . ." 28 U.S.C. § 2283. Likewise, in *Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003), we affirmed the denial of an "injunction" to "stay [a] trial." *See also Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 455 (4th Cir. 2003) (noting that the district court "issued a stay, enjoining the prosecution of suits"); *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994) ("Pursuant to the Bankruptcy Code's automatic stay provision . . . the debtor's filing of the bankruptcy petition enjoined the Florida state court from entering a decision"). These uses of "enjoin" and "stay," when coupled with the meaning ascribed by the dictionary, demonstrate that in its plain and ordinary sense, a stay serves the same function as — and is in fact a type of — an injunction. Thus, the plain meaning of the text supports the view that § 1252(f)(2) applies to stays of removal.

Teshome resists this conclusion with two arguments. First, she contends, with support from some of our sister courts, that "enjoin" in § 1252(f)(2) must not include stays of removal because Congress' use of the phrase "enjoin and restrain" in § 1252(f)(1) shows that "enjoin" applies only to permanent relief. We disagree. Nothing in the text of § 1252(f)(1) indicates that "restrain" applies only to temporary relief while "enjoin" applies to permanent relief; "restrain," just like "stay," means "to enjoin." *Black's, supra*, at 1314. In addition, we agree with the Eleventh Circuit that this argument "ignores what is an important distinction between § 1252(f)(1) and § 1252(f)(2)," *Weng*, 287 F.3d at 1339; *i.e.*, "Section 1252(f)(1) prohibits the use of injunctive relief against entire provisions of immigration law, whereas § 1252(f)(2) relates solely to enjoining 'the removal of any alien.'" *id.* (footnote omitted).

Second, Teshome asserts that when enacting the REAL ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 231, Congress considered and rejected an amendment to § 1252(b)(3)(B) which would have made clear that § 1252(f)(2) applies to stays of removal. This argument aptly illustrates the dangers inherent in resorting to this type of legislative history, for failed legislative proposals are "a particularly dangerous ground on which to rest an interpretation of a prior statute."

*Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990). Indeed, the Supreme Court has refused to read into congressional rejection of a statutory amendment an intent to leave in place prior judicial interpretations of a statute, reasoning that "congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change." *United States v. Craft*, 535 U.S. 274, 287 (2002) (internal punctuation and alterations omitted). We are faced with a similarly ambiguous legislative record here: we simply do not know why Congress rejected an amendment to § 1252(b)(3)(B) in 2005. Given the "broad statutory language Congress did enact," *Craft*, 535 U.S. at 287, Teshome's resort to subsequent legislative history is unpersuasive.

We also see several other problems with Teshome's reading of § 1252(f)(2). Initially, it is unclear when, under Teshome's view, § 1252(f)(2) would ever apply. Section 1252(f)(2) cannot apply after we have adjudicated a petition for review, for we do not "enjoin" the removal of an alien who is entitled to relief; instead we vacate the agency's final order of removal. As a result, Teshome's reading of § 1252(f)(2) would render the statute superfluous. *See Virginia v. Browner*, 80 F.3d 869, 877 (4th Cir. 1996) ("A court should not — and we will not — construe a statute in a manner that reduces some of its terms to mere surplusage."). Further, if we were to apply § 1252(f)(2) after reaching a merits determination on a petition for review, this would place another burden on a petitioner by forcing him, after he has shown entitlement to relief, to demonstrate by clear and convincing evidence that his removal is prohibited as a matter of law before relief can be granted to him. Nothing in the statute supports such a burden. Finally, Teshome's argument that we should read § 1252(f)(2) as preserving our pre-IIRIRA authority to adjudicate motions to stay pursuant to the preliminary injunction balancing test runs afoul of the express policy and statutory structure Congress set out in IIRIRA, which vested much discretion in the Executive. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999) (noting IIRIRA's "theme" is "protecting the Executive's discretion from the courts"). We are hesitant to interpret a statute so as to bolster our own power in the face of a deliberate congressional allotment of authority to another branch.

In sum, § 1252(f)(2) employs the broad term "enjoin," which plainly includes the narrower term "stay." Nothing in § 1252(f)(2) supports Teshome's contrary reading — one which would define "enjoin" more restrictively than its plain and ordinary usage. Teshome's reading of § 1252(f)(2) is therefore contrary to the statute's plain language. We decline to read into § 1252(f)(2) a distinction which Congress did not place in its text.

B.

Congress' intent in enacting IIRIRA accords with our view of the statute's plain language. As noted, prior to IIRIRA, most final orders of removal were automatically stayed upon the filing of a petition for review in the court of appeals, *see* 8 U.S.C. § 1105a(3)(a) (1994), and the courts had no jurisdiction to review an order of deportation or exclusion once the alien had departed the United States, *see* 8 U.S.C. § 1105a(c) (1994). With IIRIRA's enactment, Congress swept this system of review away. In its place, Congress provided that (1) final orders of removal are not automatically stayed when a petition for review is filed, but (2) an alien may continue to seek review of his removal order once he has left the country. *See* 8 U.S.C. § 1252(b)(3)(B); IIRIRA § 306(b).

We have recognized that in making these changes Congress sought "to expedite the removal of aliens from the country while permitting them to continue to seek review of their removal orders from abroad." *William*, 499 F.3d at 332 n.3; *see also Appiah v. INS*, 202 F.3d 704, 707 (4th Cir. 2000) ("Congress enacted IIRIRA . . . to expedite the removal of deportable aliens"). Section 1252(f)(2) harmonizes with this approach by imposing a higher burden on an alien who seeks to remain in the country while prosecuting his appeal of a removal order rather than to follow IIRIRA's route of appealing the order from outside the country. Under § 1252(f)(2), only in those cases where he has clearly demonstrated that his removal is unlawful is an alien permitted to avoid the statutory sequence of removal followed by judicial review. Granting stays based on the lesser showing contained in the preliminary injunction standard would undercut Congress' decision to expedite removals. While we are not unmindful of the hardships faced by many aliens who are removed to their home countries, at the end of the day we are bound by the policy adopted by Congress and the

Executive's implementation of that policy. *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194-95 (1978) ("Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute."). This policy, in essence, is that after exhausting multiple levels of administrative review an alien is to be removed while his petition before this court is pending, unless he satisfies the demanding standard of § 1252(f)(2).[4]

## II

Having concluded that § 1252(f)(2) governs motions to stay removal, we are left to determine only whether Teshome satisfies its standard. To do so, Teshome must show "by clear and convincing evidence" that her removal is "prohibited as a matter of law."[5] We easily conclude that Teshome has not met this standard. While Teshome argues that she would be subject to persecution upon her return to Ethiopia, we review the BIA's conclusions on this issue under the highly deferential substantial evidence standard. *Rusu v. INS*, 296 F.3d 316, 325 n.14 (4th Cir. 2002) (noting we can overturn factual findings "only if the evidence presented by the petitioner was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution"). Based on the record before us, we cannot find Teshome has demonstrated by clear and convincing evidence that the BIA would be compelled to conclude she would be subject to perse-

---

[4]We note that because the Government ultimately has the authority and responsibility to execute a final order of removal, it may choose not to remove an alien from the country before or after he has exhausted all avenues of judicial review. *See generally* 8 C.F.R. § 241.6(a) (providing that Government has discretion to stay removal administratively upon request of alien); *Moussa v. Jenifer*, 389 F.3d 550, 553-54 (6th Cir. 2004) (discussing Government's authority to execute removal order and discretion to stay execution thereof).

[5]While a clear-and-convincing standard typically applies in the context of questions of fact, it can be applied here to a question of law by simply requiring that Teshome show that her removal is clearly (as opposed to probably or more likely than not) prohibited as a matter of law. *See Weng*, 287 F.3d at 1340.

cution when returned to Ethiopia. As such, she cannot show that her removal is prohibited as a matter of law.[6]

## III

Accordingly, Teshome's motion to stay removal is

*DENIED*.

---

[6]Although the Government agrees with our view of the law and the facts, it nonetheless states it does not oppose Teshome's motion to stay. Of course, we must faithfully apply the law notwithstanding the Government's position, but it appears the Government would be more consistent if it opposed the issuance of a stay if it believes the alien does not qualify for such relief under § 1252(f)(2).