**PUBLISHED**
Filed: October 30, 2008

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ESKEDAR TESHOME-GEBREEGZIABHER,
*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

*Respondent.*

No. 08-1060

## O R D E R

Petitioner filed a petition for rehearing and rehearing en banc. Respondent filed a response.

The panel voted to deny panel rehearing.

A member of the Court requested a poll of the Court on the petition for rehearing en banc. Chief Judge Williams, Judge Wilkinson, Judge Niemeyer, Judge Traxler, Judge Shedd, Judge Duncan, and Judge Agee voted to deny the petition for rehearing en banc. Judge Michael, Judge Motz, Judge King, and Judge Gregory voted to grant the petition for rehearing en banc.

The Court denies the petition for rehearing and rehearing en banc.

Judge Shedd wrote an opinion concurring in the denial of rehearing en banc, in which Chief Judge Williams joins. Judge Michael wrote an opinion dissenting from the denial of

rehearing en banc, in which Judge Motz, Judge King, and Judge Gregory join.

For the Court

/s/ Patricia S. Connor
Clerk

SHEDD, Circuit Judge, concurring in the denial of rehearing en banc:

Relying on the plain language of 8 U.S.C. § 1252(f)(2), and supported by the clear congressional purpose underlying the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"),[1] and with full recognition of the importance of the issue, the panel in this case unanimously concluded—after oral argument and careful deliberation—that an alien who has been ordered removed from the United States must show by clear and convincing evidence that entry or execution of the order of removal is prohibited as a matter of law in order to "stay" (*i.e.*, stop) the removal. *See Teshome-Gebreegziabher v. Mukasey*, 528 F.3d 330 (4th Cir. 2008). In reaching this decision, the panel rejected Teshome's argument that our traditional circuit test for preliminary *injunctive* relief must be used. As the author of the panel opinion, I believe that it is correct for the reasons stated therein, and I therefore join in the Court's decision to deny the petition for rehearing en banc. Although I recognize that the panel opinion itself speaks for the Court and any elaboration that I add at this stage of the proceedings does not, I now write to respond to Judge Michael's opinion dissenting from the denial of rehearing en

---

[1] We recently noted in *William v. Gonzales*, 499 F.3d 329, 332 n.3 (4th Cir. 2007), that "one of IIRIRA's aims is to expedite the removal of aliens from the country while permitting them to continue to seek review of their removal orders from abroad." *See also Appiah v. U.S. Immigr. & Naturaliz. Serv.*, 202 F.3d 704, 707 (4th Cir. 2000) (noting that in enacting IIRIRA Congress "aimed to expedite the removal of deportable aliens and to limit discretionary relief").

banc. I do so because he has raised several arguments that were considered by the panel but were not then necessary for extended discussion given the panel's unanimity.

Underlying the panel decision is its conclusion that a request for a "stay" of removal is, in essence, a request for injunctive relief and, therefore, such a request falls squarely within § 1252(f)(2)'s limitation of the courts' power to enjoin the removal of aliens. That section provides: "Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." Judge Michael primarily takes issue with this conclusion by arguing that the panel's interpretation "finds little support in either history or usage." *Post* at 10.

Judge Michael's position is refuted by the authorities cited in the panel opinion that show the often synonymous nature of stays and injunctions. *See Teshome-Gebreegziabher*, 528 F.3d at 333. Perhaps most notable among those authorities is the Anti-Injunction Act (28 U.S.C. § 2283), in which Congress mandated that except in certain circumstances "[a] court of the United States may not grant an *injunction* to *stay* proceedings in a State court . . . ." (emphasis added). Judge Michael's position is further refuted by precedent in this circuit in which he joined. *See Gilliam v. Foster*, 61 F.3d 1070, 1074 (4th Cir. 1995) (en banc) (issuing a "stay" to "enjoin" a state criminal proceeding). Moreover, for what it is worth, I note that even some of the circuits that have interpreted § 1252(f)(2) in the manner Judge Michael advocates have since expressly equated stays and injunctions. *See, e.g.*, *Kijowska v. Haines*, 463 F.3d 583, 589 (7th Cir. 2006) (noting that a stay "is a form of injunction"); *United States v. Orr Water Ditch Co.*, 391 F.3d 1077, 1081 (9th Cir. 2004) (noting that "the stay order was the functional equivalent of a preliminary injunction"). Thus, contrary to Judge Michael's position,

there is a wealth of support for the panel's equating the terms "stay" and "injunction."

This is not to say that every stay is also an injunction. There is, for example, a narrow type of stay by which a court holds its own proceedings in abeyance. In that situation, the court may issue a "stay," but it does not "enjoin" itself.[2] However, in the circumstances of this case, the alien is not asking the Court to stop its own proceedings; instead, the alien is asking the Court to stop the Government (*i.e.*, a litigant in the proceedings) from removing him from the country. In that respect, the alien's request fits neatly within the *Black's Law Dictionary* definition of injunction cited by Judge Michael: that is, "[a] judicial process operating in personam, and requiring a person to whom it is directed to . . . refrain from doing a particular thing." *See post* at 11.

To better understand why a "stay" in this context is an injunction, it is important to understand how pre-IIRIRA removal orders were handled. Before IIRIRA, an alien facing removal typically received an automatic stay of the removal order when he sought appellate review on the merits of his case. However, when there was no automatic stay, and the alien asked the appellate court to stop his removal, the courts treated such a request as a request for preliminary injunctive relief. *See generally Weng v. U.S. Attorney General*, 287 F.3d 1335, 1336-38 (11th Cir. 2002). That standard for preliminary

---

[2]For this reason, Judge Michael's reliance on *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988), is misplaced. There, the Court considered the nature of stays and injunctions in the context of interlocutory appeals and held that "orders granting or denying stays of 'legal' proceedings on 'equitable' grounds are not automatically appealable" under 28 U.S.C. § 1292(a)(1). 485 U.S. at 287. It is clear that the Court was addressing the narrow class of stays involving a court's decision to hold its own proceedings in abeyance. Indeed, the Court noted that notwithstanding its ruling, § 1292(a)(1) would "continue to provide appellate jurisdiction over *orders that . . . have the practical effect of granting or denying injunctions. . . .*" 485 U.S. at 287-88 (emphasis added).

injunctive relief continues to be applied by the courts that reject the § 1252(f)(2) standard. That is, those courts that hold that a "stay" is not an "injunction" nonetheless employ their standard for preliminary *injunctive* relief in deciding whether to stop an alien's removal. By doing so, those courts signal that they understand aliens facing agency-ordered removal are seeking injunctive relief when they ask for a stay. No one can seriously suggest that an alien facing removal who asks for a "stay" would be treated differently than another similarly situated alien who seeks an "injunction" to prevent his removal. Of course, the courts would treat them both as seeking the identical relief — stopping the Government from removing them.[3]

Judge Michael also argues that the "structure and language" of § 1252 support the conclusion that Congress did not intend § 1252(f)(2) to apply in this context. *Post* at 12. I disagree. The fact that § 1252(b)(3)(B) uses the term "stay," while § 1252(f)(2) does not, adds no support to his argument. Section 1252(b)(3)(B) uses the word "stay" merely to reflect the terminology given to this injunctive relief pre-IIRIRA. *See Weng*, 287 F.3d at 1339-40 n. 8 ("The word 'stay' in § 1252(b)(3)(B) simply echoes the terminology used in the pre-IIRIRA statute concerning automatic stays which this section overturns . . ."). This is the same functional relief — injunctive relief — the removable alien seeks post-IIRIRA, and for such relief, the statute offers only one standard — that found in § 1252(f)(2).

*Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), does not aid Judge Michael's argument. In rejecting the Ninth Circuit's holding that § 1252(f) operates

---

[3]Certainly, an alien could seek both types of relief in the same case; that is, he could ask the court to stop the Government from removing him, and at the same time ask the court to stay — or hold in abeyance — its own merit review proceedings. His first request is for injunctive relief; his second is for a stay.

as a grant of jurisdiction, the *Reno* Court noted the unremarkable proposition that the section "is nothing more or less than a limit on injunctive relief [that] prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231, but specifies that this ban does not extend to individual cases." 525 U.S. at 481-82. Nothing in that statement is at all inconsistent with the panel decision that applies § 1252(f)(2) in the context of this case — that is, an individual alien seeking injunctive relief.[4]

Judge Michael also makes several arguments, reflected in opinions from other circuits, which are not really arguments against the § 1252(f)(2) standard but, instead, are arguments against *any* standard other than an automatic stay. For example, Judge Michael complains that application of the § 1252(f)(2) standard will lead to a decision being made without a full administrative record and will cause aliens to be removed while their cases are pending even if their petition for review ultimately would be successful. *See post* at 15. Of course, absent an automatic stay, which Congress has expressly eliminated, *see* 8 U.S.C. § 1252(b)(3)(B), those concerns will be present under any standard that is faithfully applied (unless one presumes that all requests for stays under the traditional injunctive relief standard will be granted).[5]

---

[4]Those courts that reject § 1252(f)(2) as the proper standard must find some purpose for this language, and they do so by reading § 1252(f)(2) in a manner that is limited to injunctive relief involving constitutional violations and legal errors. However, such a reading simply ignores the plain language of the statute. Section 1252(f)(2) is very clear: "No court shall enjoin [removal] . . . unless the entry or execution of such *order* is prohibited as a matter of law." (emphasis added). This language clearly addresses the standard when an individual seeks relief from an order of removal, which is precisely the issue before us.

[5]As the Ninth Circuit recently noted, the Government's frequent lack of opposition to motions to stay removal inevitably, and improperly, leads to a de facto automatic stay because courts in that instance "summarily fail to consider the motions." *Rivera v. Mukasey*, 508 F.3d 1271, 1278 (9th Cir. 2007).

Judge Michael also argues that the stringent standard of § 1252(f)(2), if met, would make superfluous a normal merit review by the court. *See post* at 15. However, this is simply incorrect, as a recent case in this circuit illustrates. In *Fernandez v. Keisler*, No. 06-2209 (4th Cir.), I voted to stay removal under the § 1252(f)(2) standard because it appeared that the petitioner's removal was prohibited by our opinion in *United States v. Morin*, 80 F.3d 124 (4th Cir. 1996). The stay of removal was thereafter granted. However, after briefing and oral argument, I agreed with Chief Judge Williams that *Morin* did not control the outcome of the case, and I therefore joined the panel opinion denying relief. *See Fernandez v. Keisler*, 502 F.3d 337 (4th Cir. 2007), *cert. denied sub nom. Fernandez v. Mukasey*, 2008 Westlaw 1981811 (U.S. Oct. 6, 2008).

Finally, Judge Michael argues that the panel opinion will lead to "non-uniform application of the immigration laws." *See post* at 9. In light of the fact that there exists a circuit split, there is already non-uniform application of this law. In any event, the only sure way to achieve uniformity in this area is for the circuit courts to apply § 1252(f)(2), which is the only standard mandated by Congress, rather than their individual tests for injunctive relief, which can vary from circuit to circuit.

In closing, I note that the Supreme Court has "'long recognized the power to expel or exclude aliens [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)). Moreover, "in the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Fiallo*, 430 U.S. at 792 (quoting *Mathews v. Diaz*, 426 U.S. 67, 80 (1976)). Although the § 1252(f)(2) standard is a high one, it is not insurmountable, and even in those cases in which the alien cannot meet the standard, the denial of the stay will not necessarily lead to the

purported "unjust results" to which Judge Michael alludes. *See post* at 9. By the time an asylum or withholding case comes before the circuit court of appeals in the context of review of a removal order, the application for relief has typically been considered in multiple levels of adjudication. Furthermore, the "theme" of IIRIRA is "protecting the Executive's discretion from the courts," *Reno*, 525 U.S. at 486, and the Attorney General maintains the discretion to allow an alien to remain in the country until he has exhausted all avenues of judicial review, *see Teshome-Gebreegziabher*, 528 F.3d at 334 n.4, which he frequently exercises in the alien's favor, *see Opposition to Pet. for Rehearing and Rehearing En Banc*, at 10. However, regardless of how the Attorney General exercises this discretion, Congress clearly limited the courts' discretion, and we are bound to follow that directive.

For the reasons set forth in the panel opinion, as well as the foregoing, I concur in the Court's decision to deny the petition for rehearing en banc.

Chief Judge Williams joins this concurring opinion.

MICHAEL, Circuit Judge, dissenting from the denial of rehearing en banc:

I respectfully dissent from the court's refusal to rehear this case en banc. The panel opinion adopts an incorrect standard for granting the stay of an order of removal pending consideration of an alien's petition for review. The opinion misapplies 8 U.S.C. § 1252(f)(2), which provides a heightened standard for granting injunctions against the operation of immigration laws, to stays of removal. The panel's approach has been soundly rejected by eight other circuits. *See Tesfamichael v. Gonzales*, 411 F.3d 169 (5th Cir. 2005); *Hor v. Gonzales*, 400 F.3d 482 (7th Cir. 2005); *Douglas v. Ashcroft*, 374 F.3d 230 (3d Cir. 2004); *Lim v. Ashcroft*, 375 F.3d 1011 (10th Cir. 2004); *Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003);

*Mohammed v. Reno*, 309 F.3d 95 (2d Cir. 2002); *Bejjani v. INS*, 271 F.3d 670 (6th Cir. 2001); *Andreiu v. Ashcroft*, 253 F.3d 477 (9th Cir. 2001) (en banc). *But see Weng v. U.S. Att'y Gen.*, 287 F.3d 1335 (11th Cir. 2002). The panel opinion conflicts with the language and structure of § 1252 and will create peculiar results. Because the opinion will lead to non-uniform application of the immigration laws and to unjust results in our circuit, this issue is of exceptional importance and warranted reconsideration by our full court. Fed. R. App. P. 35; *see Kenyeres v. Ashcroft*, 538 U.S. 1301, 1305 (2003) (Kennedy, J., in chambers).

Before 1996 most aliens who petitioned for review of an order of removal were entitled to an automatic stay of removal pending review. *See Tesfamichael*, 411 F.3d at 171 (citing 8 U.S.C. § 1105a(a)(3) (repealed in 1996)). However, in 1996 Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which eliminated automatic stays in a provision stating that "[s]ervice of the petition [for review] on the officer or employee does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." 8 U.S.C. § 1252(b)(3)(B). This provision does not, however, provide the standard by which a stay may be ordered.

The panel opinion erroneously relies on 8 U.S.C. § 1252(f)(2) to provide the standard for granting a stay. Section 1252(f) provides:

(f)  Limit on injunctive relief

(1)  In general

Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the opera-

> tion of the provisions of part IV of this sub-chapter . . . other than with respect to the application of such provisions to an individ-ual alien against whom proceedings under such part have been initiated.

> (2)   Particular cases

> Notwithstanding any other provision of law, no court shall enjoin the removal of an alien . . . unless the alien shows by clear and convincing evidence that the entry or execution of [the removal] order is pro-hibited as a matter of law.

The panel opinion reaches its conclusion by interpreting the term "enjoin" in subsection (f)(2) to encompass stays. *Teshome-Gebreegziabher v. Mukasey*, 528 F.3d 330, 333 (4th Cir. 2008). According to the opinion, this interpretation is based on "the plain meaning of the text." *Id.*

The panel opinion's interpretation finds little support in either history or usage. The Supreme Court expressly refused to equate injunctions and stays in *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988), which held that the two remedies are different for the purposes of an interlocutory appeal. *Id.* at 279-88; *see also Andreiu*, 253 F.3d at 483. Similarly, the Federal Rules of Appellate Procedure distinguish between stays and injunctions, especially in the context of reviewing agency decisions. *See* Fed. R. App. P. 8, 18; *see also Tesfamichael*, 411 F.3d at 174.

Nonetheless, the panel opinion relies on a phrase in the sixth edition *Black's Law Dictionary* (current at § 1252(f)'s enactment) to assert that a stay "is a 'kind of injunction' directed at a judicial case or proceedings within it." *Teshome*, 528 F.3d at 333 (quoting *Black's Law Dictionary* 1413 (6th ed. 1990)). That edition of *Black's* defined "stay" as:

A stopping; the act of arresting a judicial proceeding by the order of a court. Also that which holds, restrains, or supports.

A stay is a suspension of the case or some designated proceedings within it. It is a kind of injunction with which a court freezes its proceedings at a particular point.

*Black's Law Dictionary* 1413 (6th ed. 1990); *see also Black's Law Dictionary* 1453 (8th ed. 2004) (retaining the operative portion of the definition of "stay," but dropping the passing reference to injunctions). In contrast, "injunction" was defined in the sixth edition as "[a] court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury." *Black's Law Dictionary* 784 (6th ed. 1990). This definition then listed ten types of injunctions; "stay" is conspicuously missing from this list. *Id.*; *see also Black's Law Dictionary* 800 (8th ed. 2004) (listing seventeen types of injunctions without mentioning stays). *Black's* further refutes the panel opinion's position by explaining that an injunction is "[a] judicial process operating in personam, and requiring a person to whom it is directed to do or refrain from doing a particular thing." *Black's Law Dictionary* 784 (6th ed. 1990); *see also Black's Law Dictionary* 800 (8th ed. 2004) ("In a general sense, every order of a court which commands or forbids is an injunction; but in its accepted legal sense, an injunction is a judicial process or mandate operating *in personam* . . . ." (internal quotation marks omitted)). *Black's* thus explains that injunctions are specifically directed at parties, while stays are directed at proceedings or courts; neither term is subsumed by the other. *See Tesfamichael*, 411 F.3d at 173-74 ("While an injunction is relief obtained through independent litigation and directed at a particular party, not a tribunal, a stay is a mechanism intrinsic to judicial review"); *Andreiu*, 253 F.3d at 482-83.

The basic difference between a stay and an injunction is confirmed by the petitioner's request in this case. According

to the panel opinion, the petitioner "filed a motion [with this court] to stay her removal pending resolution of her petition for review." *Teshome*, 528 F.3d at 331. Her motion thus demonstrates that "a stay is a mechanism intrinsic to judicial review." *Tesfamichael*, 411 F.3d at 173-74. She simply asked us to suspend the operation of her removal order while we considered her petition. If we had agreed to the petitioner's request, a simple stay would have done the job. It would not have been necessary for us to enjoin or restrain the Attorney General of the United States (the named respondent) individually. To turn a stay into an injunction in these circumstances is overkill, and it depreciates the traditional force of a simple stay, which assumes automatic respect for our orders without the need for formal restraint or prohibition of individual parties.

The structure and language of § 1252 confirm that Congress meant to distinguish between the terms "stay" and "injunction" when it enacted IIRIRA. For instance, Congress used the term "stay" when it eliminated automatic stays pending appeal in § 1252(b)(3)(B). This provision does not use the word "enjoin," and it does not refer to § 1252(f)(2). Section 1252(f), on the other hand, refers only to injunctions with no mention of stays. Furthermore, the heading of § 1252(f) (which Congress crafted as part of the bill) describes the section as a "[l]imit on injunctive relief." As the Supreme Court has explained, "By its plain terms, and even by its title, [§ 1252(f)] is nothing more or less than a limit on injunctive relief." *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AAADC*), 525 U.S. 471, 481-82 (1999); *see also Andrieu*, 253 F.3d at 481.

Congress chose its words carefully when it drafted IIRIRA, and it clearly differentiated between stays and injunctions in the statute. We must, of course, interpret the terms used by Congress according to their specific meaning. As the Seventh Circuit has noted, "treating a rule addressed to 'injunctions' as covering 'stays' would impoverish the language and make

the legislative task more difficult" because "[o]ur legal vocabulary contains distinct words for distinctive judicial actions." *Hor*, 400 F.3d at 484. Indeed, the panel opinion's interpretation renders all of § 1252(b)(3)(B) superfluous, contradicting the established principle that "[s]tatutes must be interpreted . . . to give each word some operative effect." *See Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 209 (1985); *Virginia v. Browner*, 80 F.3d 869, 877 (4th Cir. 1996). If § 1252(f)(2) means that a court may not issue a stay unless the alien shows that removal is "prohibited as a matter of law," it would have been entirely pointless for Congress to state in § 1252(b)(3)(B) that stays are not automatic. *See Tesfamichael*, 411 F.3d at 175-76.

The panel opinion takes the position that § 1252(f)(2) must apply to stays because the provision has no other sensible purpose. This is not the case. As the Supreme Court has explained, § 1252(f) "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231, but specifies that this ban does not extend to individual cases." *AAADC*, 525 U.S. at 481-82. Specifically, § 1252(f)(2) provides the standard for adjudicating individual challenges that seek to enjoin the operation of the immigration laws on the grounds of constitutional or other legal deficiencies; it explains that the alien will only succeed on such a claim if he can demonstrate "by clear and convincing evidence" that the operation of the statute in his case "is prohibited as a matter of law." § 1252(f)(2). This purpose logically fits within the structure of the statute: "Subsection (f)(1) forbids injunctive class actions, and subsection (f)(2) sets a high standard for injunctive relief at retail." *Hor*, 400 F.3d at 483.

The legislative history of § 1252(f) further supports this view. Without mentioning stays, the House Report explains the purpose of § 1252(f)'s limit on injunctive relief:

> [C]ourts may issue injunctive relief pertaining to the case of an individual alien, and thus protect against

> any immediate violation of rights. However, single district courts or courts of appeal do not have authority to enjoin procedures established by Congress to reform the process of removing illegal aliens from the U.S.

H.R. Rep. 104-469(I), at 161 (1996); *see Andreiu*, 253 F.3d at 481 n.1. The legislative history confirms that "[t]he clear concern of [§ 1252(f)] is limiting the power of courts to enjoin the operation of the immigration laws, not with stays of removal in individual asylum cases." *Andreiu*, 253 F.3d at 481.

The panel opinion further posits that failure to apply the § 1252(f)(2) standard to stays "runs afoul of the express policy" of IIRIRA, "which vested much discretion in the Executive." *Teshome*, 528 F.3d at 334. However, in enacting § 1252(b)(3)(B), Congress clearly eliminated automatic stays for aliens with pending petitions for review. This change alone, which grants the executive discretion to remove an alien where none previously existed, is consistent with the policies of IIRIRA. Taking the additional step of applying the § 1252(f)(2) standard to stays is not necessary to carry out congressional intent. *See Arevalo*, 344 F.3d at 9. Indeed, in *AAADC* the Supreme Court rejected an interpretation of § 1252 that would broadly restrict judicial power. *AAADC*, 525 U.S. at 482. Instead, the Court narrowly construed the statute's terms. *Id.* (emphasizing "the need for precision in legislative drafting"). The panel opinion is inconsistent with the Supreme Court's careful approach in *AAADC*. *See Arevalo*, 344 F.3d at 8 ("[R]eading [§ 1252(f)(2)] in a more circumspect manner follows the path demarcated by the Supreme Court in [*AAADC*], in which the Court indicated that [§ 1252(f)(2)] should be construed narrowly . . . ."); *Andreiu*, 253 F.3d at 481-82.

Finally, applying the § 1252(f)(2) standard to stays leads to results that are at best peculiar and at worst quite troubling.

The panel opinion imposes a more stringent standard on an alien seeking a stay than that required for the alien to succeed on the merits. *See Tesfamichael*, 411 F.3d at 175. It thus requires an alien to litigate the merits at the motion stage, often before he (or the court) even has access to the administrative record. *See Andreiu*, 253 F.3d at 482. In the rare case where a stay is granted, the standard renders a merits hearing superfluous, because the stay decision will "essentially duplicate the decision on the merits." *Id.* Furthermore, an alien could be removed under the standard for a stay even if his challenge would be successful on the merits. Section 1252(f)(2)'s requirement that the removal be clearly "prohibited by law" also means that an alien presenting a meritorious issue of first impression or challenging a substantial evidence determination can *never* be granted a stay, a result that "run[s] counter to [§ 1252(b)(3)(B)]'s allowance for such stays by court order." *Tesfamichael*, 411 F.3d at 173 (citing *Hor*, 400 F.3d at 483).

While an alien may litigate after removal, this right is meaningless if the alien is removed to a country where he will be tortured, jailed, or otherwise harmed. *See Hor*, 400 F.3d at 485. Barring meaningful access to the courts is especially troubling in the cases where the alien would succeed on the merits. *See Kenyeres*, 538 U.S. at 1305. Of course, any discomfort with this result would carry little weight in the face of a clear directive from Congress. But there is no such directive here.

As Justice Kennedy has noted, the standard governing stays of removal "is important" and warrants careful consideration. *Kenyeres*, 538 U.S. at 1305. Eight circuits, in carefully reasoned opinions, have held that 8 U.S.C. § 1252(f)(2) does not apply to stays pending appeal of removal orders. The panel opinion adopts a contrary rule, joining only one other circuit, without refuting many of the compelling counter-arguments presented by the other circuits. For these reasons, and for the

reasons outlined by the other circuits, I respectfully dissent from the denial of rehearing en banc.

Judge Motz, Judge King, and Judge Gregory join this dissent.