MICHAEL, Circuit Judge,
dissenting from the denial of rehearing en banc:
I respectfully dissent from the court’s refusal to rehear this case en bane. The panel opinion adopts an incorrect standard for granting the stay of an order of removal pending consideration of an alien’s petition for review. The opinion misapplies 8 U.S.C. § 1252(f)(2), which provides a heightened standard for granting injunctions against the operation of immigration laws, to stays of removal. The panel’s approach has been soundly rejected by eight other circuits. See Tesfamichael v. Gonzales, 411 F.3d 169 (5th Cir.2005); Hot v. Gonzales, 400 F.3d 482 (7th Cir. 2005); Douglas v. Ashcroft, 374 F.3d 230 (3d Cir.2004); Lim v. Ashcroft, 375 F.3d 1011 (10th Cir.2004); Arevalo v. Ashcroft, 344 F.3d 1 (1st Cir.2003); Mohammed v. Reno, 309 F.3d 95 (2d Cir.2002); Bejjani v. INS, 271 F.3d 670 (6th Cir.2001); An-dreiu v. Ashcroft, 253 F.3d 477 (9th Cir. 2001) (en banc). But see Weng v. U.S. Att’y Gen., 287 F.3d 1335 (11th Cir.2002). The panel opinion conflicts with the lan *290 guage and structure of § 1252 and will create peculiar results. Because the opinion will lead to nonuniform application of the immigration laws and to unjust results in our circuit, this issue is of exceptional importance and warranted reconsideration by our full court. Fed. R.App. P. 35; see Kenyeres v. Ashcroft, 538 U.S. 1301, 1305, 123 S.Ct. 1386, 155 L.Ed.2d 301 (2003) (Kennedy, J., in chambers).
Before 1996 most aliens who petitioned for review of an order of removal were entitled to an automatic stay of removal pending review. See Tesfamichael, 411 F.3d at 171 (citing 8 U.S.C. § 1105a(a)(3) (repealed in 1996)). However, in 1996 Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which eliminated automatic stays in a provision stating that “[sjervice of the petition [for review] on the officer or employee does not stay the removal of an alien pending the court’s decision on the petition, unless the court orders otherwise.” 8 U.S.C. § 1252(b)(3)(B). This provision does not, however, provide the standard by which a stay may be ordered.
The panel opinion erroneously relies on 8 U.S.C. § 1252(f)(2) to provide the standard for granting a stay. Section 1252(f) provides:
(f) Limit on injunctive relief
(1) In general
Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchap-ter ... other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.
(2) Particular cases
Notwithstanding any other provision of law, no court shall enjoin the removal of an alien ... unless the alien shows by clear and convincing evidence that the entry or execution of [the removal] order is prohibited as a matter of law.
The panel opinion reaches its conclusion by interpreting the term “enjoin” in subsection (f)(2) to encompass stays. Teshome-Gebreegziabher v. Mukasey, 528 F.3d 330, 333 (4th Cir.2008). According to the opinion, this interpretation is based on “the plain meaning of the text.” Id.
The panel opinion’s interpretation finds little support in either history or usage. The Supreme Court expressly refused to equate injunctions and stays in Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), which held that the two remedies are different for the purposes of an interlocutory appeal. Id. at 279-88, 108 S.Ct. 1133; see also Andreiu, 253 F.3d at 483. Similarly, the Federal Rules of Appellate Procedure distinguish between stays and injunctions, especially in the context of reviewing agency decisions. See Fed. R.App. P. 8,18; see also Tesfamichael, 411 F.3d at 174.
Nonetheless, the panel opinion relies on a phrase in the sixth edition Black’s Law Dictionary (current at § 1252(f)’s enactment) to assert that a stay “is a ‘kind of injunction’ directed at a judicial case or proceedings within it.” Teshome, 528 F.3d at 333 (quoting Black’s Law Dictionary 1413 (6th ed.1990)). That edition of Black’s defined “stay” as:
A stopping; the act of arresting a judicial proceeding by the order of a court. Also that which holds, restrains, or supports.
A stay is a suspension of the case or some designated proceedings within it. It is a kind of injunction with which a *291 court freezes its proceedings at a particular point.
Black’s Law Dictionary 1413 (6th ed.1990); see also Black’s Law Dictionary 1453 (8th ed.2004) (retaining the operative portion of the definition of “stay,” but dropping the passing reference to injunctions). In contrast, “injunction” was defined in the sixth edition as “[a] court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury.” Black’s Law Dictionary 784 (6th ed.1990). This definition then listed ten types of injunctions; “stay” is conspicuously missing from this list. Id.; see also Black’s Law Dictionary 800 (8th ed.2004) (listing seventeen types of injunctions without mentioning stays). Black’s further refutes the panel opinion’s position by explaining that an injunction is “[a] judicial process operating in personam, and requiring a person to whom it is directed to do or refrain from doing a particular thing.” Black’s Law Dictionary 784 (6th ed.1990); see also Black’s Law Dictionary 800 (8th ed. 2004) (“In a general sense, every order of a court which commands or forbids is an injunction; but in its accepted legal sense, an injunction is a judicial process or mandate operating in personam ...(internal quotation marks omitted)). Black’s thus explains that injunctions are specifically directed at parties, while stays are directed at proceedings or courts; neither term is subsumed by the other. See Tes-famichael, 411 F.3d at 173-74 (“While an injunction is relief obtained through independent litigation and directed at a particular party, not a tribunal, a stay is a mechanism intrinsic to judicial review”); Andreiu, 253 F.3d at 482-83.
The basic difference between a stay and an injunction is confirmed by the petitioner’s request in this case. According to the panel opinion, the petitioner “filed a motion [with this court] to stay her removal pending resolution of her petition for review.” Teshome, 528 F.3d at 331. Her motion thus demonstrates that “a stay is a mechanism intrinsic to judicial review.” Tesfamichael, 411 F.3d at 173-74. She simply asked us to suspend the operation of her removal order while we considered her petition. If we had agreed to the petitioner’s request, a simple stay would have done the job. It would not have been necessary for us to enjoin or restrain the Attorney General of the United States (the named respondent) individually. To turn a stay into an injunction in these circumstances is overkill, and it depreciates the traditional force of a simple stay, which assumes automatic respect for our orders without the need for formal restraint or prohibition of individual parties.
The structure and language of § 1252 confirm that Congress meant to distinguish between the terms “stay” and “injunction” when it enacted IIRIRA. For instance, Congress used the term “stay” when it eliminated automatic stays pending appeal in § 1252(b)(3)(B). This provision does not use the word “enjoin,” and it does not refer to § 1252(f)(2). Section 1252(f), on the other hand, refers only to injunctions with no mention of stays. Furthermore, the heading of § 1252(f) (which Congress crafted as part of the bill) describes the section as a “[l]imit on injunc-tive relief.” As the Supreme Court has explained, “By its plain terms, and even by its title, [§ 1252(f) ] is nothing more or less than a limit on injunctive relief.” Reno v. Am.-Arab Anti-Discrimination Comm. (AAADC), 525 U.S. 471, 481-82, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999); see also An-dreiu, 253 F.3d at 481.
Congress chose its words carefully when it drafted IIRIRA, and it clearly differentiated between stays and injunctions in the statute. We must, of course, interpret the *292 terms used by Congress according to their specific meaning. As the Seventh Circuit has noted, “treating a rule addressed to ‘injunctions’ as covering ‘stays’ would impoverish the language and make the legislative task more difficult” because “[o]ur legal vocabulary contains distinct words for distinctive judicial actions.” Hot, 400 F.3d at 484. Indeed, the panel opinion’s interpretation renders all of § 1252(b)(3)(B) superfluous, contradicting the established principle that “[sjtatutes must be interpreted ... to give each word some operative effect.” See Walters v. Metro. Educ. Enters., 519 U.S. 202, 209, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997); Virginia v. Browner, 80 F.3d 869, 877 (4th Cir.1996). If § 1252(f)(2) means that a court may not issue a stay unless the alien shows that removal is “prohibited as a matter of law,” it would have been entirely pointless for Congress to state in § 1252(b)(3)(B) that stays are not automatic. See Tesfamichael, 411 F.3d at 175-76.
The panel opinion takes the position that § 1252(f)(2) must apply to stays because the provision has no other sensible purpose. This is not the case. As the Supreme Court has explained, § 1252(f) “prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231, but specifies that this ban does not extend to individual cases.” AAADC, 525 U.S. at 481-82, 119 S.Ct. 936. Specifically, § 1252(f)(2) provides the standard for adjudicating individual challenges that seek to enjoin the operation of the immigration laws on the grounds of constitutional or other legal deficiencies; it explains that the alien will only succeed on such a claim if he can demonstrate “by clear and convincing evidence” that the operation of the statute in his case “is prohibited as a matter of law.” § 1252(f)(2). This purpose logically fits within the structure of the statute: “Subsection (f)(1) forbids injunctive class actions, and subsection (f)(2) sets a high standard for injunctive relief at retail.” Hor, 400 F.3d at 483.
The legislative history of § 1252(f) further supports this view. Without mentioning stays, the House Report explains the purpose of § 1252(f)’s limit on injunctive relief:
[Cjourts may issue injunctive relief pertaining to the case of an individual alien, and thus protect against any immediate violation of rights. However, single district courts or courts of appeal do not have authority to enjoin procedures established by Congress to reform the process of removing illegal aliens from the U.S.
H.R. Rep. 104-469(1), at 161 (1996); see Andreiu, 253 F.3d at 481 n. 1. The legislative history confirms that “[t]he clear concern of [§ 1252(f) ] is limiting the power of courts to enjoin the operation of the immigration laws, not with stays of removal in individual asylum cases.” Andreiu, 253 F.3d at 481.
The panel opinion further posits that failure to apply the § 1252(f)(2) standard to stays “runs afoul of the express policy” of IIRIRA, “which vested much discretion in the Executive.” Teshome, 528 F.3d at 334. However, in enacting § 1252(b)(3)(B), Congress clearly eliminated automatic stays for aliens with pending petitions for review. This change alone, which grants the executive discretion to remove an alien where none previously existed, is consistent with the policies of IIRIRA. Taking the additional step of applying the § 1252(f)(2) standard to stays is not necessary to carry out congressional intent. See Arevalo, 344 F.3d at 9. Indeed, in AAADC the Supreme Court rejected an interpretation of § 1252 that would broadly restrict judicial power. AAADC, 525 U.S. at 482, 119 S.Ct. 936. Instead, the *293 Court narrowly construed the statute’s terms. Id. (emphasizing “the need for precision in legislative drafting”). The panel opinion is inconsistent with the Supreme Court’s careful approach in AAADC. See Arevalo, 344 F.3d at 8 (“[R]eading [§ 1252(f)(2) ] in a more circumspect manner follows the path demarcated by the Supreme Court in [AAADC ], in which the Court indicated that [§ 1252(f)(2) ] should be construed narrowly. ...”); Andreiu, 253 F.3d at 481-82.
Finally, applying the § 1252(f)(2) standard to stays leads to results that are at best peculiar and at worst quite troubling. The panel opinion imposes a more stringent standard on an alien seeking a stay than that required for the alien to succeed on the merits. See Tesfamichael, 411 F.3d at 175. It thus requires an alien to litigate the merits at the motion stage, often before he (or the court) even has access to the administrative record. See Andreiu, 253 F.3d at 482. In the rare case where a stay is granted, the standard renders a merits hearing superfluous, because the stay decision will “essentially duplicate the decision on the merits.” Id. Furthermore, an alien could be removed under the standard for a stay even if his challenge would be successful on the merits. Section 1252(f)(2)’s requirement that the removal be clearly “prohibited by law” also means that an alien presenting a meritorious issue of first impression or challenging a substantial evidence determination can never be granted a stay, a result that “run[s] counter to [§ 1252(b)(3)(B)]’s allowance for such stays by court order.” Tesfamichael, 411 F.3d at 173 (citing Hor, 400 F.3d at 483).
While an alien may litigate after removal, this right is meaningless if the alien is removed to a country where he will be tortured, jailed, or otherwise harmed. See Hor, 400 F.3d at 485. Barring meaningful access to the courts is especially troubling in the cases where the alien would succeed on the merits. See Kenyeres, 538 U.S. at 1305, 123 S.Ct. 1386. Of course, any discomfort with this result would carry little weight in the face of a clear directive from Congress. But there is no such directive here.
As Justice Kennedy has noted, the standard governing stays of removal “is important” and warrants careful consideration. Kenyeres, 538 U.S. at 1305, 123 S.Ct. 1386. Eight circuits, in carefully reasoned opinions, have held that 8 U.S.C. § 1252(f)(2) does not apply to stays pending appeal of removal orders. The panel opinion adopts a contrary rule, joining only one other circuit, without refuting many of the compelling counter-arguments presented by the other circuits. For these reasons, and for the reasons outlined by the other circuits, I respectfully dissent from the denial of rehearing en banc.
Judge MOTZ, Judge KING, and Judge GREGORY join this dissent.